Marcus Belton (98903-011)-5-5-566
Metropolitan Detention Center
P.O. Box 1500
Los Angeles, CA 90053



Case No. CR14-00030 PJH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plantiff,<br><br>v.<br>MARCUS BELTON,<br>Defendant. | No. CR 14-00030 PJH<br><br>NOTICE OF MOTION AND MOTION FOR DISMISSAL [NO PREDICATE OFFENSE]<br>As soon as the matter may be heard<br>Hon. Phyllis J. Hamilton |

TO THE CLERK OF THE ABOVE_ENTITLED COURT AND TO THE UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that on the date and at the time indicated above, defendant MARCUS BELTON, through counsel, will and hereby does move this court for an Order dismissing the instant action due to the lack of a predicate offense to substantiate the charge of 18 U.S.C. 922 (g) Felon in Possession of a Firearm.

The motion is made on the grounds that the civil rights that Mr. Belton was deprived of prior to May 16, 2013 were restored on that date by operation of law because of his termination of probation and post-release supervision.

This motion is supported by this Notice of Motion, the accompanying 'randum of Points and Authorities, the files and records in this case, any further argument and evidence.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION ARGUMENT**

This motion requests that the court find that the Government cannot establish the predicate to the charged offense - Felon in Possession of a Firearm - in that Mr. Belton is an ex-felon not a felon.

The Ninth Circuit addressed this particular factual situation in United States v. Geyler, 932 F.2d 1330 (9th Cir. 1991). In Geyler, the defendant had been convicted of Misprison of a Felony for which a term of imprisonment of over one year was authorized. Upon Geyler's discharge from imprisonment, he was granted an automatic restoration of civil rights.

Despite that restoration of Geyler's rights, the Government subsequently charged him with the same charge as here - 18 U.S.C. 922 (g)(1) - and Geyler was convicted. The Ninth Circuit noted that any conviction effectively becomes a non-conviction if a felon's rights are restored. Geyler, supra, 1344. The Geyler court examined the legislative intent behind 18 U.S.C. 921(a)(20) and concluded that its language was clearly what Congress intended - that a state's restoration of civil rights to a person eliminates the underlying conviction as a predicate offense for purposes of federal firearms laws, whether the conviction was for a state or federal offense. Geyler, supra, at 1347.

Here, Mr. Belton asserts that his rights were restored on May 16, 2013 upon his completion of the conditions imposed on him. See Exhibit 1 (Alameda County Probation Department Termination Notice). As such, he cannot qualify as a felon for federal firearms charges and, therefore, the instant Indictment is improvidently filed.

# ALAMEDA COUNTY
# PROBATION DEPARTMENT

**LADONNA HARRIS**
Chief Probation Officer

May 16, 2013

### TERMINATION FROM ALAMEDA COUNTY PROBATION
### POST RELEASE COMMUNITY SUPERVISION

This letter is verification that, DOB: 9-12-71, F81912 has completed and met the conditions imposed upon him/her and is therefore terminated from Alameda County Probation Department Post Release Community Supervision (PRCS).

Marcus Belton began his/her PRCS in Alameda County on 03/27/2012.

As of May 16, 2013, he/she is no longer on active PRCS with the Alameda County Probation Department. Respective to this specific case (F81912), his/her rights regarding search and seizure have been reinstated.

If further assistance is needed, I can be contacted at (510) 268-2629.

*R. Hadley*
R. Hadley #310
Deputy Probation Officer

---

**Mail Reply to Address Indicated:**

| | | |
|---|---|---|
| **X** Probation Center<br>400 Broadway, P.O. Box 2059<br>Oakland, CA 94604-2059 | ☐ Community Probation North<br>7200 Bancroft Avenue, Suite 270<br>Oakland, CA 94605-2410 | ☐ 24085 Amador Street, 4th Floor<br>Hayward, CA 94544-1201 |
| ☐ Family Preservation Unit<br>2300 Fairmont Drive, LV2<br>San Leandro, CA 94578-1090 | ☐ Community Probation South<br>24085 Amador Street, 3rd Floor<br>Hayward, CA 94544-1201 | ☐ 24085 Amador Street, Suite 310<br>Hayward, CA 94544-1201 |
| ☐ Camp Wilmont Sweeney<br>2600 Fairmont Drive<br>San Leandro, CA 94578-1090 | ☐ Juvenile Justice Center<br>2500 Fairmont Drive, Room C1055<br>San Leandro, CA 94578-1090 | ☐ 5672 Stoneridge Drive<br>Pleasanton, CA 94588-8559 |

Case4:14-cr-00030-JST   Document82   Filed10/30/14   Page4 of 15

4/14

## TABLE OF AUTHORITIES

U.S. v. Valencia-Roldan, 893 F.2d 1080.1082 (9th Cir. 1990)
U.S. v. Dangdee, 616 F.2d 1118 (9th Cir. 1980)
U.S. v. Wilson, 591 F.2d 546 (9th Cir. 1979)
U.S. v. Hefner, 842 F.2d 731 (4th Cir. 1988)
U.S. v. Edwards, 745 F. Supp. 1477, 1479 D.Minn. 1990
INS v. Cardoza-Fonesca, 480 U.S. 421, 432 n. 12, 107S.ct.1207
U.S. v. Geyler, 932 F.2d 1330, 1336 (9th Cir. 1991)

## ARGUMENT

Marcus Belton moves this court for an order dismissing charge of 18 U.S.C 922 (g) (1) felon in possession of firearem by a convicted felon on the grounds that the conviction which served as the predicate offense is not a "conviction" within the meaning of the federal firearms statue. On January 16, 2014 Belton was charged in federal district court with 18 U.S.C. 922 (g) (1). As of May 16, 2013 upon his completion of the conditions imposed upon him, California law granted him an automatic restoration of civil rights. Belton argues that the U.S. Attorney erred in charging him with 18 U.S.C. 922 (g) (1) violating the statue which prohibits possession of a firearm*1322 by a convicted felon. That statue makes it unlwaful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year... to ship or transport any firearm or ammunition in interstate or foriegn commerce." 18 U.S.C. Sec. 922(g)(1). The term "crime punishable by imprisonment for a term exceeding one year" is defined in relevant part as follows: What constitutes a conviction of a crime punishable by imprisonment for a term exceeding one year shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or recieve firearms.

### 18 U.S.C. Sec. 921 (a)(20)

According to Belton, because California law restored his civil rights upon absolute discharge from probation on imprisonment on the misprision of a felony offense, the offense no longer qualifies as a 'conviction" pursuant to Sec. 921(a)(20). The government responds that in light of the first sentence of Sec. 921(a)(20), which refers to the law of the prosecuting jurisdiction, only action taken by the federal government, and not action taken by the states, can serve to nullify the effect of a prior federal felony conviction. We review questions of statutory interpretaion de novo. United States v. Valencia-Roldan, 893 F.2nd 1080, 1082 (9th Cir. 1990). II.

The plain language of Sec. 921(a)(20) provides that for purposes of prohibitions relating to the possession of firearms, any conviction shall be considered a non-conviction in the event of an expungement or setting aside of the conviction or a pardon or a restoration of civil rights. The use of the connector "or" makes clear that each method is a distinct and independent procedure. Here we are concerned soley with the restoration of civil rights-- a procedure that differs from the others both in its primary goal and in its jurisdictional reach. The purpose of an expungment, a setting aside of a conviction, and a pardon is to nullify the conviction itself. In the case of a restoration of civil rights, however, the sole objective is to restore the individual's rights, and the conviction is not affected--except, of course, in the rare case such as the present one, in which a separate statue provides that nullification of the conviction for a particular purpose shall be a consequence of a restoration of rights. The specific reference in Sec. 921(a)(20) to the restoration procedure indicates that Congress intended to recognize that independent process as a seperate basis for treating a conviction as a non-conviction. Moreover, the inclusion in the statue of the restoration procedure could not have been accidental. The procedure is widely used, and Congress was certainly aware of it. See Special Project, The Collateral Consquences of a Criminal Conviction, 1333 Y23 Vand.L.Rev. 929, 1143(1970) [hereinafter Special Project] (all fifty states have provisions for the restoration of civil rights.)

As a distinct and independent procedure, the governed by jurisdictional rules that differ from those applicable to the other forms of relief. Both state and federal law contain provisions for the other three procedure: expungement, setting aside of a conviction, and pardon. There is no jurisdictional overlap with respect to these provisions; for example, the President has no authority to punish state felons, and the governors have no authority to pardon federal felons. See generally Special Project, supra, at 1143-47. For these methods of nullifying a conviction, only state actions can nullify state convictions and only federal actions can nullify federal convictions. The restoration of civil rights, however, is an entirely different matter. State law deprives felons, both state and federal, of their civil rights initially. See, e.g., Ariz.Rev.Stat.Ann.Sec.13-904(1989) ("A conviction for a felony suspends the following civil rights of the person sentenced..."). And only the states provide a procedure whereby following completion of a felon's sentence his

conviction remains intact but his civil rights may be restored. Unlike any of the other procedures listed in Sec. 921(a)(20), a state's restoration of civil rightsis available to all felons. See e.g., Ariz.Rev.Stat.Sec. 13-912(1978). Because there is no federal procedure for restoring civil rights to a federal felon, Congresscould not have expected that the federal government would perform this function. The reference in Sec. 921(a)(20) to the restoration of civil rights must be to the state procedure. Concievably, when enacting the federal firearms laws, Congress could have limited the benefits of state's restoration of rights to state felons only. The plain language of the statue, however, makes it evident that Congress did not do so. Pursuant to Sec. 921(a)(20), "[a]ny conviction" shall be nullified as predicate offense in the event of restoration of civil rights. If the government were correct that a state restoration of rights cannot nullify a federal conviction for purposes of the firearms laws, it would then not be true that "[a]nyconviction...for which a person...has had civil rights restored shall not be considered a conviction for purposes of this chapter..." (Emphasis added.) Insteade, the statutory clause would apply only to state convictions, not to "any" conviction. The only reading of Sec. 921(a)(20) that gives full meaning to its plain language is that any conviction effectively becomes a non-conviction if a felon's civil rights are restored--i.e., if a state has restored the felon's rights. See United States v. Dangdee, 616 F.2d 1118 (9th Cir.1979) (the phrase "any passport" in 18 U.S.C. Sec.1543 refers to passports issued by foreign governments as well as those issued by the United States); United States v. Wilson,591 F.2d. 546 (9th Cir.1979) (the phrase"any official" in 18 U.S.C. Sec.3612 refers to state as well as federal official). Thus, according to the plain language, a federal felon whose civil rights are restored pursuant to state law, like a state felon whose rights are so restored, is no longer considered as having been "convicted" for purposes of the federal firearms laws. The United States District Court for District of Minnesota reached the same conclusion when it recently confronted the identical issue. In holding that a state's restorations of civil rights of a federal felon removed the federal felony conviction as a predicate offense for the federal firearms laws, the court observed:*1334
It is the state, not the federal government, that defines and restores a person's civil rights, even in relationship to the federal government. The United States Constitution does not bar convicts from holding federal office. The right to vote, even in federal elections, is set by the states.

The electors of both senators and representatives are determined by state law. U.S. Const. art. 1, Sec. 2, cl. 1; U.S. Const. amend. 17. The right of a former convict to serve on federal juries depends on whether state law has restored civil rights. 28 U.S.C. Sec. 1865(b)(5); United State v. Hefner, 842 F.2d 731 (4th Cir.1988). United States v. Edwards, 745 F.Supp. 1477, 1479 (D.Minn.1990). The court concluded, " While the law of the jurisdiction where the proceeding is held determines what is a conviction and whether it has been set aside, expunged, or subject to a pardon, the law of the state where a person is a citizen governs that person's civil rights." Id. In this case, the meaning of the statutory language is clear. "Any conviction ... for which a person... has had civil rights restored" means precisely that. Pursuant to the plain language of Sec. 921(a)(20), a state's restoration of civil rights to a person eliminates the underlying conviction as a predicate offense for purposes of the federal firearms laws, whether the conviction was for a state or federal offense III.The goverment's argument to the contrary relies on an unrelated reference in Sec. 921(a)(20) to the law of the prosecuting jurisdiction. The definitional provision of Sec. 921 (a)(20) contains two sentences. The first sentence states: "What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." The meaning of this sentence is not in dispute: federal law determines the existance of a federal conviction, and state law determines the existence of a state conviction. It is the second sentence, however, that is the focus of this case. That sentence reads: "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter , unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." The government contends that the reference in the first sentence to the law of the prosecuting jurisdiction also applies to the unrelated clause in the second sentence regarding the restoration of civil rights.

Unfortunately for the government, nothing in the language of the statue supports this wishful suggestion and nothing contravenes the plain language we have previously identified. The two sentences relied on by the government pertain to two entirely *1335 different sets of circumstances. The first sentence addresses the question of what constitutes a conviction; this is, quite simply, answered by the law of the prosecuting jurisdiction, and Congress made it plain that it desired that result. The second sentence governs the effect of post-conviction events. Under the provisions of the second sentence, once the law of the prosecuting jurisdiction has confirmed that a conviction exists, there are four ways in which the effects of the conviction may be avoided for purposes of the federal firearms laws. These four methods, as we have noted supra, are: expungement, setting aside of a conviction, pardon, or a restoration of civil rights. As we have explained, the jurisdictional; reach of federal and state law is not the same with respect to each of these procedures. Specifically, the restoration of rights, unlike the other procedures, is carried out only by the states, and it is the only procedure under which one jurisdiction may grant relief to persons convicted in the other. **IV.**

When statutory language is clear, even under the most relaxed of standards "we look to the legislative history to determine only whether there is "clearly expressed legislative intention contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." INS v. Cardoza-Fonseca, 480 U.S. 421,432n. 12,107 S.Ct. 1207,1213n. 12,94 L.Ed.2d 434(1986). Here, the legislative history manifestly fails to establish the "clearly expressed legislative intention" necessary to the adoption of a contrary construction. In fact, a close reading of the legislative history discloses that Congress quite likely never gave any specific thought to the problem of a state restoring a federal felon's civil rights when it enacted the federal firearms statue. Section 921(a)(20) was amended in response to Dickerson v. New Banner Institute, INC., 461 U.S. 911, 103 S.Ct.1887, 76 L.Ed.2d 815(1983). That case held that a state expunction of a state conviction a nullity for purposes of the federal firearms law. Congress enacted by passing legislation that expressly removed a conviction as a predicate offense if the conviction were expunged or set aside, or granted a restoration of his civil rights.

In passing this legislation, Congress focused on the anomaly of having a state felon's conviction nullified for purposes of the state law but not for purposes of federal firearms law. Nowhere in the legislative history did anyone refer to federal felons. The complete absence of any attention to Congress was intent on overruling Dickerson and, as is not uncommon in these days of complex legislation and overworked legislators, may have failed to consider specifically other related issues that would be directly affected by the passage of the proposed legislation. At no point does the legislative history evidence any concern regarding the treatment of federal felonies, let alone any intention to exclude persons convicted of federal crimes from the benefits of the restoration of rights provision. Congress's failure to discuss the issuree of federal felonies during the congressional debates falls far short of the "clearly expressed legislative intention" that we must find before we may override the plain language of a stattue. The legislative history *1336 is clearly inadequate to overcome the statue' plain meaning **V.**

The only possible remaining basis for refusing to give the statutory language its plain meaning would be if the rule we would establish would be so absurd or harmful to governmental or societal interests as towarrant adopting a conflicting construction. See United States v. Missouri Pac. RR, 278 U.S. 269,278,49 S.Ct.133,136,73 L.Ed. 322(1929). Admittedly, the rule giving effect to a state's restoration of a federal felon's rights is more cumbersome to administer than one in which only the federal government coul take action affecting federal convictions. However, the defendent's interpretation has advantages as well as disadvantages. Among the former is the fact that his interpretation is consistent with the congressional goals and objectives that underlie that statue. Congress was aware of the policy implications of resting federal firearms law on the varying laws of fifty states. The Bureau of Alcohol, Tobacco and Firearms clearly warned Congress that the first sentence of Sec. 921(a)(20) "would require the Bureau to examined the peculiar laws of each State to determine whether a person is convicted for Federal purposes." Assessment by the Bureau of Alcohol, Tobacco and Firearms: S.49, The "Firearms Owners Protection act" (Feb. 10, 1986), reprinted in 1986 U.S. Code Cong.& Admin.News 1327,1342,1346. Congress enacted the provisions.

As the court in Edwards recently pointed out, "it is by no means anomalous in our complicated federal system for persons who have acted similarly to be treated differently in federal criminal cases because of the application of differing state laws." 745 F.Supp. at 1479 (citing Major Crimes Act, 18 U.S.C. Sec. 1153; Assimilative Crimes Act, 18 U.S.C. Sec. 13). Although the system may be cumbersome, it is by no means so "absurd or impracticable" that we may override plain statutory language in order to reach a different result. See Missouri Pac. RR, 278 U.S. at 278, 49 S.Ct. at 136. Thus, even a consideration of policy implications could not justify adopting a contrary construction. **VI.** In order to reach the result urged by the government, we would have to ignore another cardinal rule of statutory construction. The rule of lenity requires that "where there is ambiguity in a criminal statute, doubts are to be resolved in favor of the defendant." United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971). Even if the language of Sec. 921(a)(20) did not plainly require us to reverse, the statutory reference to "any conviction" would render the enactment ambiguous, at the least.

## CONCLUSION

The plain statutory language requires the reversal of Geylers's conviction for possession of firearms by a convicted felon. Neither the legislative history nor policy considerations justifies our overriding that language and reaching the opposite result. Accordingly, we reverse Geyler's conviction

**REVERSED.**

**FLETCHER,** Circuit Judge, dissenting:

I respectfully dissent. As the majority recognizes, supra, at 1335, Congress *1337 amended section 921(a)(20) in response to Dickerson v. New Banner Institute, Inc., 461 U.S. 911, 103 S.Ct. 1887, 76 L.Ed.2d 815 (1983), which denied any effect to state expunctions, pardons or civil rights restorations related to state convictions for purposes of the federal firearms laws. In my view--and the majority does not appear to disagree--Congress's purpose in passing the amendment was to enable states to determine the effect of their own convictions. The amendment was not intended to give states the ability to restore to federal felons rights impaired by federal convictions. The majority's reading of the words "any conviction" as allowing states to determine the effect of federal convictions creates the Dickerson problem in reverse. While I do not believe that the first sentence of the amendment (specifying that what constitutes a "conviction" is to be determined in accordance with the law of the jurisdiction in which the proceedings were held) is dispositive of how to read the second sentence, as suggested by the government, I do think it must inform our reading of the words "any conviction." *Read in context, it is not plain to me that those words signify that a state's restoration of a federal felon's rights previously suspended by

the state determines the vitality and significance of the federal conviction vis-a-vis federal firearms laws. Where the language of the statute is ambiguous, as I believe it is here, we look to legislative history and Congress's broader purpose in passing the amendment. Both, in my view, support reading the amendment to mandate federal deference to states' treatment of their own convictions, but not state control over the consequences of federal convictions under the federal firearms laws.----------*Hon. Pierce Lively. Senior United States Circuit Judge for the Sixth Circuit, sitting by designation. 1 At the time in question, this statute read in its entirety: "Upon completion of the term of probation, or upon absolute discharge from imprisonment and upon the completion of payment of any fine or restitution imposed, any person who has not previously been convicted of any other felony shall automatically be restored any civil rights which lost or suspended by the conviction." Id. On its face, this statute does not expressly apply to federal convictions. Indeed,"felony" is defined in Sec. 13-105(13) to include only state offenses. Nevertheless, in the context of chapter 9 of the Arizona Criminal Code, the term "felony" takes on a broader meaning. Were this not so, we would be faced with the anomaly of Arizona law permitting the restoration of civil rights to a two-time federal felon, see Secs. 13-909,-910 , but not to a one-time federal felon, see Sec. 13-912. In order to avoid this incongruous result, we interpret "felony" in Sec. 13-912 to include federal as well as state offenses. 2 Those procedures may have the incidental effect of restoring civil rights. See Special Project, The Collateral Consequences of a Criminal Conviction, 23 Vand.L.Rev. 929, 1147 (1970). However, that is not their primary objective. 3 A restoration of civil rights serves to obviate the use of a conviction for purposes of the federal firearms laws only because Congress has expressly so provided in firearms statute. Ordinarily, a restoration of civil rights leaves the conviction intact for all purposes but enables the convicted felon to resume voting, serving on a jury, and engaging in other activities for which his rights had been revoked. 4 A long line of precedents requires us to give meaning wherever possible to every word and clause when interpreting a statute. See Moskal v. United States, --U.S.--, 111 S.Ct. 461,466,112 L.Ed.2d 449(1990); Hoffman v. Connecticut Dep't of Income Maintenance, 492 U.S. 96,109 S.Ct. 2818,2823,106 L.Ed.2d 76 (1989); United States v. Menasche, 348 U.S. 528,538-39, 75 S.Ct. 513, 519-20, 99 L.Ed. 615 (1955); Montclair v Ramsdell, 107 U.S. 147,152, 27L.Ed. 431 (1883). For this reason, we cannot assume that a restoration of rights is subsumed inthe other categories of post-conviction relief. 5 Within the context of chapter 9 of the Arizona Criminal Code, the word "felony" encompasses both state and federal offenses. See supra note 1. That

interpretation applies to Sec. 13-903, as Arizona could not "restore" rights that it had not revoked in the first place. Cf. State ex. inf. Peach v. Goins, 575 S.W.2d 175, 180 (Mo.1978) ("The majority of jurisdictions which have addressed the issue hold that a 'conviction' of a felony under federal law disqualifies a person from voting or holding public office in the state although he has not been 'convicted' in the state system."). 6 The statement in Edwards regarding the relation between federal and state law on the one hand and an individual's civil rights on the other is slightly overstated. In certain limited instances, federal law does affect the civil rights of convicted felons. Federal statutes prohibit persons convicted of specified crimes from holding federal offices. See, e.g., 18 U.S.C. Sec. 2071(b) (whoever conceals, removes, or mutilates public records shall be disqualified from federal office). Federal law also requires persons convicted of specified offenses to forfeit public office. See, e.g., 18 U.S.C. Sec. 1905(whoever discloses confidential information while holding federal office shall forfeit that office). Also, as we have noted, see supra note 2, federal law can reinstate a federal defedant's civil rights as an incidental by-product of a pardon, expungement, or setting aside of a conviction. Presumably the states cannot restore the few civil rights that are taken away by the federal government. Nonetheless, the overwhelming majority of civil disabilities imposed upon the conviction of a felony--whether the conviction is state or federal--are imposed by state law. Moreover, the existence of a small number of federally imposed civil disabilities does not change the fact that federal and state law are not parallel regarding the restoration of rights. Although federal and state law each provides for pardons, expunctions, and the setting aside of a conviction, federal law does not provide a procedure whereby the federal government can simply restore civil rights without nullifying the conviction. State law, on the other hand, may do this for federal as well a state felons. 7 The sentence was enacted "to accommodate state reforms adopted since 1968, which permit dismissal of charges after a plea and successful completion of a probationary period, or which create 'open-ended' offenses, conviction for which may be treated as misdemeanor or felony at the option of the court." Federal Firearms Owners Protection Act, S. Rep. No. 583, 98th Cong., 2d Sess. 7 (1984). 8 The standard advocated by Justice Scalia in his concurring opinion is much stricter: " if the language of a statute is clear, that language must be given effect--at least in the absence of a patent absurdity." Id. at 452, 107 S.Ct. at 1223. (Scalia, J., concurring in the judgment); see also Fort Stewart Schools v. Federal

Labor Relations Authority,--U.S.---, 110 S.Ct. 2043, 2046, 109 L.Ed.2d 659 (1990) (Scalia, J.) ("the court...must give effect to the unambiguously expressed intent of Congress"). 9 Under the government interpretations it would be lawful under state law, but unlawful under federal law, for federal felons whose civil rights had been restored to carry firearms. Moreover, federal felons who had been convicted of non-violent crimes such as mail fraud or securities fraud would be forbidden to carry firearms while state felons who had been convicted of murder or assault with a deadly weapon would not. If Congress had intended to limit the type of felonies that could be overlooked for purposes of the federal firearms laws following a restoration of civil rights by state, it seems far more likely that it would have based its distinctions on the nature of the crimes rather than on the jurisdictional bases of the convictions. In any event, there is no reason to believe that Congress would have wanted to accord greater benefits to state felons than to federal felons when state laws restore rights to both *" '[I]n expounding a statute, we [are] not...guided by a single sentence or member if a sentence, but look to the provisions of the whole law, and to its object and policy.' " Massachusetts v. Morash, 490 U.S.107, 109, S.Ct 1668, 104 L.Ed.2d 98(1989) (quoting Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555,95 L.Ed.2d 39(1987)).

This motion is based on codifying statutes, case laws, and United States Constitution, and any argument of counsel as may be presented at the hearing on this motion.

Respectfully submitted,

*Marcus* /s/ *Belton*
Marcus Belton
10-19-14

TRULINCS 98903011 - BELTON, MARCUS - Unit: LOS-E-S

----------------------------------------------------------------------------------------------------

FROM: 98903011
TO:
SUBJECT:
DATE: 10/09/2014 09:45:15 AM

To Case Manager:
Ad Hoc Resolution

It's my understanding that you're a liaison for me between outside agencies and the courts. However, I believe there is confusion regarding an old probationary violation from November 27th 2002. I was sent to Seattle, Washington FDC-Seatac where I served ten months. Upon completion I was sentenced to the halfway house in Oakland, California where I stayed for 21 days. While I was there the staff asked me to sign a contract extending my stay there but I refused because all of my federal obligations were completed after serving time in FDC-Seatac. In 2004 I was arrested on state charges and subsequently ended up serving 8 months 20 days in Santa Rita County. Before my release from state jurisdiction I discovered a U.S. Marshall hold. As a result I was sent to Glen E. Dyer, Alameda County Sheriff Detention Facility where I was made to serve additional time. At the end of my term in Alameda County I was interviewed by staff from the Oakland halfway house regarding the alleged walk away in 2002. My claim is that I don't owe the Federal Bureau of Prisons any additional diligence on case No. CR 98-40082 DLJ 18 U.S.C. 3146 (9)(2) for failure to surrender for service. I already served 10 months in FDC Seatac to quash the remainder of my supervised term. Therefore, if the Oakland halfway house believes I owe them more, they're mistaken.

In conclusion, I would like an ad hoc resolution on this matter. I would also like old computation on this sentence. I would also like to know if the Bureau of Prisons feel as though I owe them any time on this matter.

*Correctional Systems Eberhardt*