1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney
2
   DAVID R. CALLWAY (CABN 121782)
3  Chief, Criminal Division

4  MANISH KUMAR (CABN 269493)
   Special Assistant United States Attorney
5       1301 Clay Street, Suite 340S
        Oakland, California 94612
6       Telephone: (510) 637-3680
        FAX: (510) 637-3724
7       manish.kumar@usdoj.gov

8  Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 4:14-00030 JST |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Date: November 20, 2015 |
| MARCUS BELTON, | Time: 9:30 a.m. |
| Defendant. | Oakland Courthouse |

## I. INTRODUCTION

Pursuant to Criminal Local Rule 32-5(b), the United States respectfully submits its sentencing memorandum concerning Defendant Marcus Belton. On June 29, 2015, a jury found defendant guilty of being a felon in a possession of a firearm, possession with intent to distribute cocaine and cocaine base with 1,000 feet of a school, and carrying a firearm in furtherance of a drug trafficking crime. Considering the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence defendant, a Career Offender with ten prior convictions, to a sentence of 360 months in custody, which is the low end of the range set forth in the Sentencing Guidelines, along with a six-year period of supervised release, no fine, and a $400 special assessment.

## II. BACKGROUND

### A. Factual Background

The factual record of defendant's October 2013 arrest was developed during a week-long trial. In summary, after an undercover Oakland Police Department officer saw defendant conducting hand-to-hand drug transactions from a parked car, defendant was arrested with a loaded pistol in the waistband of his pants, as well as assorted drugs, paraphernalia, and ammunition in the backseat of the car. PSR ¶ 6. Notably, the arrest occurred within 1,000 feet of New Highland Academy, an elementary school in East Oakland, in the late afternoon. Trial Transcript (ECF Nos. 171, 173-175, 185) at 353:19; 504:3. The semiautomatic pistol was fully loaded and had a round in the chamber. *Id.* at 485:20. The drugs found in the car and on defendant's person consisted of 69 baggies of cocaine base, 29 baggies of cocaine powder, five pills of suspected MDMA, and two baggies of marijuana. *Id.* at 486:3; 493 4:10. The paraphernalia included, among other things, a second magazine containing additional ammunition matching the pistol, a digital scale, a cutting agent, and packaging material for drugs. *Id.* at 496:6-17.

### B. Defendant's Criminal History Category is VI.

The government concurs with the U.S. Probation Officer's conclusion that defendant's criminal history category is VI. Presentence Report (PSR) ¶ 45. In the 1990s, defendant sustained a felony conviction for possession of a controlled substance for sale, as well as misdemeanor convictions for carrying a concealed weapon, evading a police officer, and hit and run. PSR ¶¶ 33-37. These all fall outside the applicable time to be counted for purposes of the criminal history calculation. Defendant's first qualifying conviction was in 1998, when he was convicted of using a communications facility to commit a drug felony and was sentenced to 48 months. *Id.* at ¶ 38. This sentence falls within the applicable fifteen-year time period, yielding three criminal history points. U.S.S.G. §§ 4A1.1(a) and 4A1.2(e). In 2003, defendant was convicted of failing to surrender for service of sentence, another federal felony, and was sentenced to ten months in custody. This sentence falls outside the applicable

ten-year period, so it results in no criminal history points.[1] *Id.* at ¶ 39. In 2005, defendant was sentenced to five years' probation and eight months in jail for possession/purchase for sale of a controlled substance. His probation was later revoked, and he was sentenced to an additional three years, yielding three criminal history points. *Id.* at ¶ 40. In 2007, defendant was sentenced to eight years and eight months in prison for possession/purchase for sale of cocaine base, yielding three more criminal history points. Also in 2007, defendant was sentenced to five years' probation and one day in jail for being a felon in possession of a firearm and possession/purchase for sale of cocaine base, yielding a single criminal history. In total, defendant has ten criminal history points, which corresponds to a criminal history category of V. However, as discussed below, defendant is a Career Offender, which raises his criminal history category by a single level to VI.

### C. Sentencing Guidelines Calculations

The government concurs with the U.S. Probation Officer's determination that Counts One through Three correspond to an offense level 34 because defendant is a Career Offender based on his prior drug convictions.[2] U.S.S.G. § 4B1.1(b)(2). Absent the Career Offender designation, defendant's offense level would be 28 for Counts One through Three. PSR ¶ 26.

However, because defendant was also convicted pursuant to 18 U.S.C. § 924(c) (Count Four), the Career Offender guideline directs that the sentencing range be determined using the table in subsection (c)(3) in lieu of an offense level calculation. U.S.S.G. § 4B1.1(c)(2). The table indicates a Guidelines range of 360 months to life in the absence of any reduction for acceptance of responsibility.

---

[1] The PSR incorrectly assigns two points for this violation. The government consulted with the U.S. Probation Officer and understands that that this will be corrected at the sentencing hearing. This change does not alter the Criminal History Category.

[2] The PSR indicates that the defendant objected to his designation as a Career Offender because some of his convictions were based on *nolo contendere* pleas. PSR ¶ 59. To the contrary, the Guidelines state that a *nolo contendere* plea shall count as a predicate offense for purposes of determining Career Offender status. *See* U.S.S.G. § 4B1.2(c).

By statute, Count Four carries a mandatory minimum consecutive sentence of 60 months. 18 U.S.C. § 924(c)(1).

## III. DISCUSSION

As established in *United States v. Booker*, 543 U.S. 220, 220 (2005), the Sentencing Guidelines are no longer mandatory, only advisory. Sentencing proceedings should nevertheless begin by determining the applicable Guidelines range. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*).

Sentencing courts must consider, in addition to the Guidelines, the factors set forth in 18 U.S.C. § 3553(a). These factors include the need for the sentence to reflect the seriousness of the offense and the history of the defendant, afford adequate deterrence, protect the public from further criminal conduct by the defendant, and avoid sentencing disparities among similarly situated defendants.

The government respectfully submits that a low-end sentence would be appropriate in light of the sentencing factors set forth in 18 U.S.C. § 3553(a). The United States agrees with the Probation Office that there is no readily identifiable basis for a downward variance on this record.

### A. The Nature of the Offense

This is not simply a drug case. Defendant placed the community in serious danger by committing his crimes. He engaged in armed drug dealing during daylight hours on a busy street in East Oakland. An elementary school was less than a thousand feet away, and the school day had ended not long ago. Defendant's pistol was in his waistband, within easy reach. The magazine was fully loaded with ten rounds, its maximum capacity, and an eleventh round was chambered. Nearby in the vehicle, defendant carried a second magazine with still more ammunition.

Thankfully, the pistol wasn't fired, but defendant's crimes were far from victimless. He was caught selling highly addictive drugs on the street, including four varieties in more than one hundred portions. The majority of these drugs consisted of cocaine and cocaine base, which is troubling after

considering that nearly 5,000 individuals died in 2013 from cocaine-related overdoses.[3] Communities such as East Oakland are held hostage by the fear of gun-carrying drug dealers who walk their streets. For nothing more than his financial gain, defendant needlessly imperiled the community with a combination of a six-time convicted felon, a loaded pistol, and illegal narcotics, all near a school. The proposed Guidelines sentence takes full measure of defendant's dangerous conduct.

### B. Characteristics of Defendant and Protection of the Public

Defendant is a 44 year-old Oakland native who has no assets, no education beyond the ninth grade, and has never been full-time employed. He had a self-described "normal" upbringing until his father died when defendant was age 14. PSR ¶ 46. More recently, defendant lost his half-brother. *Id.*

Against this background, defendant developed an extensive criminal history that shows an utter lack of concern for following the law. He has sustained six felony convictions, four misdemeanor convictions, five other arrests, and has generally performed poorly under community supervision. All but one of defendant's felony convictions involved illicit narcotics activity. He is, in short, a strongly recidivist drug dealer who has been in routine contact with law enforcement for essentially all of his adult life. Also concerning is that defendant's criminal history has been punctuated by occasional periods of violence earlier in his life. In 2004, he broke down the front door of a home in Oakland while carrying heroin, marijuana, and cocaine base. PSR ¶ 40. In 1993, defendant was implicated by three eyewitnesses in a drive-by shooting, though the witnesses recanted and the case was dismissed. *Id.* at ¶ 48. To date, defendant has refused to take any responsibility for committing the instant offenses. *Id.* at ¶ 10.

When afforded some measure of leniency, defendant used it as an opportunity to commit more crimes, not make changes in his behavior. For example, in 2002, when the Honorable Judge Jensen of this court provided defendant with a self-surrender date following a federal supervised release revocation, defendant absconded and was subsequently arrested and prosecuted for failure to surrender

---

[3] Overdose Death Rates supporting data document, National Institute on Drug Abuse, http://www.drugabuse.gov/related-topics/trends-statistics/overdose-death-rates (last visited Nov. 13, 2015).

for service of sentence. *Id.* at ¶ 38. This was immediately after he had failed out of the East Bay Community Recovery Project. *Id.* More recently, after serving a state prison term, defendant began a period of community supervision on May 27, 2012, which was set to terminate on March 27, 2015. *Id.* at ¶ 41. After being terminated early from supervision for good behavior, he had resumed selling drugs just five months later when he was arrested for the instant offenses. *See id.*

Based on this record of continuous and sometimes violent criminal activity, a lengthy period of incarceration will serve the statutory sentencing goal of protecting the public from additional crimes of the defendant. Furthermore, in light of defendant's criminal history, the government joins U.S. Probation in recommending the search condition contained in Paragraph 6 of the proposed judgment.

### C. Promote Respect for the Law, Punishment, and Deterrence

The government's recommended also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). Given defendant's lengthy criminal history, it is unclear whether any specific deterrence is possible. Even lengthy sentences, including a federal sentence of 48 months and a recent prison sentence of eight years and eight months, have not discouraged defendant from reengaging in the same crimes. Nevertheless, the recommended sentence will promote respect for the law and achieve general deterrence by communicating that armed drug dealing near a school will not be tolerated and will result in a significant period of incarceration.

### D. Unwarranted Sentencing Disparity

One of the statutory goals of sentencing is to avoid unwarranted disparities among similarly-situated defendants. In 2014, among the approximately 277 cases nationwide involving § 924(c) convictions and a career offender designation, the average sentence was 243 months.[4] This average reflects the following breakdown: 32.4% of sentences for § 924(c) career offenders were within guidelines, 41.7% were below the guidelines range because the government sponsored the below-range

---

[4] Quick Facts on Section 924(c) Firearms Offenses, United States Sentencing Commission, http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Section_924c_FY14.pdf (last visited Nov. 13, 2015).

U.S.' SENT. MEM.
CR 14-00030 JST                              6

sentence (roughly half of these were substantial assistance departures), and the remaining 24.3% were below-range and not government-sponsored. For the last category, the average reduction in the length of sentence was 29.4%.



After reviewing the record, the government has been unable to identify any factors under § 3553(a) that would warrant a departure from the Guidelines. Accordingly, the government submits that defendant falls squarely within the category of approximately one-third of § 924(c) career offenders where a Guidelines sentence has been imposed. A Guidelines sentence in this case would not create unwarranted sentencing disparities among similarly situated defendants.

## IV. CONCLUSION

Based upon the reasons set forth above, the United States respectfully requests that the Court impose a sentence of 360 months, to be followed by six years of Supervised Release, no fine, and a $400 special assessment.

DATED: November 13, 2015

Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney

/s/ MANISH KUMAR
Special Assistant United States Attorney