1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7     UNITED STATES OF AMERICA,              Case No. 14-cr-00030-JST-1

                    Plaintiff,
8                                             **ORDER DENYING MOTION TO**
                                              **VACATE, SET ASIDE, OR CORRECT**
9          v.                                 **SENTENCE**

10    MARCUS BELTON,                          Re: ECF Nos. 288, 313

                    Defendant.
11

12

13          Before the Court is Defendant Marcus Belton's motion to vacate, set aside, or correct his

14   sentence pursuant to 28 U.S.C. § 2255.  ECF No. 288.  The Court will deny the motion.[1]

15   **I.     BACKGROUND**

16          This criminal case stems from Belton's arrest on October 14, 2013, during which officers

17   recovered a firearm and various drugs and drug paraphernalia.  ECF No. 1 at 3.  On January 16,

18   2014, a grand jury indicted Belton with one count of being a felon in possession of a firearm, *see*

19   18 U.S.C. § 922(g)(1).  ECF No. 2.  The grand jury later returned a superseding indictment adding

20   two counts of possessing with intent to distribute cocaine and cocaine base near a school, *see* 21

21   U.S.C. § 860, and one count of possessing a firearm in furtherance of a drug trafficking crime, *see*

22   18 U.S.C. § 924(c).  ECF No. 86.

23          The record of the pretrial proceedings in this matter is lengthy and convoluted, in no small

24   part because four different court-appointed attorneys were forced to withdraw from representing

25   _____

26   [1] As discussed in greater detail below, the Court previously vacated its prior order and judgment
     denying Belton's motion after it became apparent that the government had failed to serve its
27   opposition on Belton.  ECF No. 306.  The Court ordered the government to serve its opposition
     and provided Belton an opportunity to file a reply, *id.*, which Belton did on July 18, 2019, ECF
28   No. 311.  Belton also filed another motion on July 22, 2019, ECF No. 313, raising additional
     arguments.  Having considered Belton's reply, the Court now reaches the same result.

United States District Court
Northern District of California

Belton.  *See* ECF No. 27, 63, 71, 101.  The Court reviews specific portions of the record in depth below only as necessary to respond to Belton's claims.

On January 2, 2015, the Court granted Belton's motion to proceed pro se.  ECF No. 102; *see also* ECF No. 190 at 26-41 (conducting *Faretta* colloquy).  The Court later appointed Peter Fitzpatrick as standby counsel.  ECF No. 122.  On June 22, 2015, the first day of trial, Belton informed the Court that he wanted Fitzpatrick to take over and represent Belton during the trial.  ECF No. 171 at 19:5-10.  The Court granted the request.  *Id.* at 24:19-22.  After a five-day trial, the jury found Belton guilty on all four counts.  ECF No. 177.

On November 23, 2015, the Court sentenced Belton to 240 months imprisonment.  ECF No. 202.  Belton appealed his conviction, arguing that the Court erred in (1) denying Belton's various requests for continuances; (2) ruling that if Belton represented himself at trial and sought to testify, he would have to examine himself in question-and-answer format; (3) admitting evidence of Belton's prior felonies; and (4) denying Belton's motion to dismiss the superseding indictment for vindictiveness.  The Ninth Circuit rejected these arguments and affirmed.  *United States v. Belton*, 694 F. App'x 576 (9th Cir. 2017).  After the Ninth Circuit denied Belton's petition for rehearing en banc, *see* ECF No. 250, Belton petitioned for certiorari, which the Supreme Court likewise denied on January 8, 2018, *see Belton v. United States*, No. 17-7069 (U.S.).

On June 8, 2018, Belton timely filed this pro se motion to vacate his sentence.  ECF No. 263; *see also* 28 U.S.C. § 2255(f)(1).  The Court ordered the government to answer the motion.  ECF No. 267; *see also* 28 U.S.C. § 2255(b).  After the Court granted the government an extension to respond to the motion, ECF No. 277, Belton filed a series of requests to amend his motion, ECF Nos. 279, 280, 282, 283.  The Court ordered Belton to file a single amended § 2255 motion by November 7, 2018.  ECF Nos. 282, 284.  Belton did not do so, but he later filed another amended motion on January 2, 2019.  ECF No. 288.  The Court treats that filing – which appears to contain copies of most or all of Belton's prior motions – as the operative motion.

Given Belton's late filing, the Court granted the government additional time to respond to the motion.  ECF No. 289.  After the government did not comply with that deadline, the Court

2

1   ordered the government to file an answer by March 29, 2019.  ECF No. 292.  The government did

2   so, ECF No. 296, but did not serve its opposition on Belton.  Belton filed a motion to dismiss for

3   failure to prosecute on May 3, 2019, which was docketed as a reply and construed as such.  ECF

4   No. 301.  The Court denied Belton's motion and entered judgment on June 10, 2019.  ECF Nos.

5   303, 304.  Two days later, it became that Belton had not received the opposition, and the Court

6   accordingly vacated judgment, ordered the government to serve its opposition, and provided

7   Belton an opportunity to file a reply.  ECF No. 306.  Belton filed his reply on July 18, 2019.  ECF

8   No. 311.  Belton then filed an additional motion raising new arguments.  ECF No. 313.

9   **II.    LEGAL STANDARD**

10          28 U.S.C. § 2255 authorizes a court to "vacate, set aside, or correct the sentence" of a

11  federal prisoner, where "the sentence was imposed in violation of the Constitution or laws of the

12  United States, or that the court was without jurisdiction to impose such sentence, or that the

13  sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

14  attack."  28 U.S.C. § 2255(a); *see also United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir.

15  2011).  A § 2255 motion is not, however, "a chance at a second appeal."  *United States v. Berry*,

16  624 F.3d 1031, 1038 (9th Cir. 2010).  Section 2255 therefore "does not encompass all claimed

17  errors in conviction and sentencing."  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

18  "Where the error is neither jurisdictional nor constitutional, the appropriate inquiry is whether the

19  error is 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an

20  omission inconsistent with the rudimentary demands of fair procedure,' and whether the error

21  'present[s] exceptional circumstances where the need for the remedy afforded by the writ of

22  habeas corpus is apparent.'"  *Lord v. Lambert*, 347 F.3d 1091, 1094 (9th Cir. 2003) (alteration in

23  original) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

24          Section 2255 requires a court to hold a hearing and render findings of fact and conclusions

25  of law "[u]nless the motion and the files and records of the case conclusively show that the

26  prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "[T]he standard essentially is whether the

27  movant has made specific factual allegations that, if true, state a claim on which relief could be

28  granted."  *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (quoting *United States v.*

United States District Court
Northern District of California

3

*Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)).  In other words, "[a] hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Schaflander*, 743 F.2d at 717.  In making this determination, a judge who conducted the original criminal proceedings "may supplement the record with his 'recollection of the events at issue.'" *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977)).

## III.   DISCUSSION

Because Belton is pro se, the Court construes his motion and its myriad attachments liberally and does not hold him to the standards expected of a trained lawyer. *United States v. Seesing*, 234 F.3d 456, 462 (9th Cir. 2000), *as amended* (Jan. 29, 2001) ("Pro se complaints and motions from prisoners are to be liberally construed.").  Nonetheless, even under this liberal standard, "[w]here a prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required." *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).  After reviewing the record and the government's response, the Court concludes that Belton's claims are meritless and do not require a hearing.

### A.   Jurisdictional Claims

The Court first briefly addresses Belton's jurisdictional claims.  Belton's claim that the Court lacks jurisdiction over federal offenses committed in Alameda County, ECF No. 288 at 136-48, is patently frivolous and warrants no further discussion, *see United States v. McCalla*, 545 F.3d 750, 756 (9th Cir. 2008) (explaining that "the argument that federal courts are without jurisdiction over matters that do not occur exclusively in federal territory. . . . is wholly without merit"); 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").

Belton's attack on the government's Article III standing, ECF No. 288 at 148, is similarly misplaced.  Courts have uniformly rejected this argument as frivolous. *See, e.g.*, *United States v. Castillo*, No. 8:17-CR-525-T-17CPT, 2018 WL 4610636, at *5 (M.D. Fla. July 9, 2018), *report and recommendation adopted*, No. 8:17-CR-525-T-17CPT, 2018 WL 3474057 (M.D. Fla. July 19,

1    2018) (collecting cases); *United States v. Monzel*, No. 09-CR-243 (GK), 2017 WL 1745372, at *3

2    (D.D.C. May 3, 2017).

3         Lastly, Belton's extended discussion of judicial immunity is irrelevant to the relief

4    requested in this motion.  ECF No. 288 at 155-81.

5         **B.**     **Claims Decided by the Ninth Circuit**

6              **1.**     **Legal Standard**

7         A § 2255 motion is not an opportunity to relitigate issues already decided on direct appeal.

8    *United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999) ("The law in this circuit is clear that

9    when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again

10   on a 2255 motion." (quoting *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972)).

11   Therefore, it is well established that "[i]ssues disposed of on a previous direct appeal are not

12   reviewable in a subsequent [§] 2255 proceeding" and the "fact that [an] issue may be stated in

13   different terms is of no significance."  *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979)

14   (citations omitted).

15             **2.**     **Analysis**

16        On direct appeal, the Ninth Circuit rejected Belton's claims based on (1) the denial of

17   various continuances, (2) the format of Belton's potential self-examination at trial, (3) admission

18   of Belton's prior state felonies; and (4) the denial of Belton's motion to dismiss the indictment for

19   vindictiveness.  *See Belton*, 694 F. App'x at 576-77.  Belton nonetheless continues to contend that

20   the Court erred in admitting evidence of felonies and denying the motion to dismiss for

21   vindictiveness.  ECF No. 288 at 34-37; ECF No. 311 at 9-10.  The Court rejects Belton's improper

22   attempt to revive these claims.  *See Scrivner*, 189 F.3d at 828.

23        **C.**     **Procedurally Defaulted Claims**

24             **1.**     **Legal Standard**

25        "The general rule in federal habeas cases is that a defendant who fails to raise a claim on

26   direct appeal is barred from raising the claim on collateral review."  *Sanchez-Llamas v. Oregon*,

27   548 U.S. 331, 350-51 (2006) (citation omitted); *United States v. Ratigan*, 351 F.3d 957, 962 (9th

28   Cir. 2003) (citation omitted) ("A § 2255 movant procedurally defaults his claims by not raising

United States District Court
Northern District of California

5

1    them on direct appeal and not showing cause and prejudice or actual innocence in response to the

2    default.").  One notable exception is an ineffective assistance of counsel claim, which "may be

3    brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the

4    claim on direct appeal."  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Otherwise, a § 2255

5    movant must generally "demonstrate both 'cause' for not raising the claim at trial, and 'prejudice'

6    from not having done so."  *Sanchez-Llamas*, 548 U.S. at 351.[2]

7        "In procedural default cases, the cause standard requires the petitioner to show that some

8    objective factor external to the defense impeded counsel's efforts to raise the claim [on direct

9    appeal]."  *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citation and internal quotation marks

10   omitted).  "If a petitioner succeeds in showing cause, the prejudice prong of the test requires

11   demonstrating 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they

12   worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

13   constitutional dimensions.'"  *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007)

14   (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  This prejudice

15   standard "is significantly greater than that necessary under" plain error review.  *Murray v. Carrier*,

16   477 U.S. 478, 494 (1986).

17           **2.       Analysis**

18       Belton's pleadings take issue with numerous rulings and other events that occurred during

19   pre-trial proceedings and trial itself.  The Court addresses below the claims that Belton was

20   required to, but did not, raise on direct appeal.  As a general matter, Belton has not shown cause

21   and prejudice to excuse these procedural defaults.  In the alternative, even if the Court were to

22   reach these claims, they patently fail on the merits.

23           **a.       Grand Jury Issues**

24       Throughout the pretrial process, Belton repeatedly raised issues related to perceived grand

25   jury violations.  ECF No. 56; ECF No. 116; ECF No. 118.  On April 21, 2015, the Court (1)

26

27   [2] A defendant who fails to show cause and prejudice can nonetheless obtain review by
     demonstrating "that the constitutional error . . . has probably resulted in the conviction of one who
28   is actually innocent."  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotations and
     citation omitted).  Belton has made no such showing.

United States District Court
Northern District of California

1   denied Belton's motion to compel production of grand jury testimony; (2) denied Belton's motion

2   to inspect the grand jury ballot but stated that the Court would review the ballot *in camera*[3]; and

3   (3) ordered the government to disclose the legal instructions given to the grand jury.  ECF No.

4   132.

5         Belton's pleadings cite several purported errors related to the grand jury.  As a threshold

6   matter, the Court notes that, with the exception of Belton's apparent *Brady* claim, none appear to

7   be constitutional in nature.  Because Belton has not shown that any of these claims involve "a

8   fundamental defect which inherently results in a complete miscarriage of justice," *Hill*, 368 U.S. at

9   428, they are not cognizable in a § 2255 motion.  *Lord*, 347 F.3d at 1094

10         Turning to the individual claims, Belton first appears to argue that the government failed to

11   provide him with the required copy of the grand jury instructions.  ECF No. 288 at 18.  Belton did

12   not raise this claim on direct appeal and has identified no cause for this default.  *See Skurdal*, 341

13   F.3d at 925.  Moreover, there is no prejudice, and the claim would fail on the merits, because

14   Belton's claim is plainly contradicted by the attachments to his motion, which contain a transcript

15   of instructions to the grand jury.  ECF No. 288 at 71-77; *see also* ECF No. 135 (certificate of

16   service of grand jury transcripts containing instructions).

17         Belton next contends that the government did not comply with its promise to "produce the

18   grand jury testimony of any witnesses that it intends to call at trial," ECF No. 121 at 2, citing

19   *Brady v. Maryland*, 373 U.S. 83 (1963).  ECF No. 288 at 18.[4]  This claim is likewise procedurally

20   defaulted.  Even assuming the truth of Belton's allegation, there is no suggestion that he "did not

21   discover the fact until after the conclusion of the appeal," as would constitute cause for the default.

22   *United States v. Mejia-Mesa*, 153 F.3d 925, 928 (9th Cir. 1998), *as amended* (Sept. 4, 1998).  Nor

23   has Belton shown prejudice, in the form of "material" evidence that the government failed to

24   disclose.  *Mejia-Mesa*, 153 F.3d at 929 (explaining that satisfying the material evidence

25

26   _____

    [3] The Court's review confirmed that 12 or more grand jury members voted to indict.  ECF No.
27   133.

28   [4] Belton's related assertion that the government did not produce a witness list, ECF No. 288 at 18,
     is also contradicted by the record, ECF No. 161.

United States District Court
Northern District of California

1   component of a *Brady* violation generally constitutes prejudice for purposes of procedural

2   default).  Belton has not even identified the particular witness whose grand jury testimony was

3   allegedly withheld, let alone the exculpatory information that it would have contained.  *See*

4   *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (holding that district court did not err in

5   denying evidentiary hearing on *Brady* claim when "absolutely no evidence support[ed] [movant's]

6   claim that such a report would have contained exculpatory evidence").  To the extent that Belton

7   relies on the contentions of his pretrial motion to disclose grand jury testimony, nothing in

8   Belton's pleadings alters the Court's prior conclusion that Belton had "not substantiated his

9   allegation that the Government knowingly introduced false testimony before the grand jury."  ECF

10  No. 132 at 2.

11      Third, to the extent that Belton directly attacks the Court's denial of that motion to compel,

12  the same analysis governs.

13      Finally, Belton's assertion that the government did not produce a witness list, ECF No. 288

14  at 18, is also contrary to the record, ECF No. 161.

15                      **b.      Speedy Trial Rights**

16      Belton next asks the Court to "take notice" that he previously complained about violations

17  of his speedy trial rights.  ECF No. 288 at 19.  Any speedy trial claim is procedurally defaulted,

18  unexcused, and meritless.

19      To the extent Belton's claim is based on his constitutional speedy trial rights, the roughly

20  twenty months to trial is presumptively prejudicial.  *See United States v. Mendoza*, 530 F.3d 758,

21  762 (9th Cir. 2008).  In this case, however, any delay is largely attributable to Belton's prolific

22  motion practice and cycling through four attorneys before finally choosing to represent himself.

23  *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009) ("[D]elay caused by the defense weighs against the

24  defendant.").  The Ninth Circuit noted as much in rejecting Belton's claim that the Court erred by

25  denying various requests for continuances.  *Belton*, 694 F. App'x at 576 ("Belton rejected several

26  different appointed attorneys throughout the course of the proceedings, and engaged in dilatory

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

conduct while representing himself.").[5]  Finally, Belton did not assert his right to a speedy trial until after the trial itself, and he has not identified any prejudice that resulted.  *See United States v. Alexander*, 817 F.3d 1178, 1183 (9th Cir. 2016) (requiring defendant to demonstrate "particularized prejudice").

Belton's speedy trial claim fares no better if cast as a statutory claim under the Speedy Trial Act.  Belton does not explain why the Court erred in the one stipulated exclusion of time that he identifies.  *See* ECF No. 288 at 19 (referring to complaint made on March 11, 2014); *see also* ECF No. 9 (excluding time from March 11, 2014 until March 26, 2014).[6]  More to the point, Belton waived his right to move for dismissal for this alleged Speedy Trial Act violation by waiting until years after trial.  *See United States v. Tanh Huu Lam*, 251 F.3d 852, 861 (9th Cir. 2001) ("Given that Lam waited thirteen months after his trial had begun to file a motion to dismiss, the plain language of the statute compels our conclusion that Lam waived his statutory speedy trial right.")[7]; *Johnson v. United States*, No. 08-02462 JSW, 2009 WL 3733052, at *2 (N.D. Cal. Nov. 6, 2009) (applying waiver to § 2255 motion).

### c.    Motion to Suppress

Belton also repeatedly references his motion to suppress.  ECF No. 288 at 14, 19, 26, 35. Belton's first attorney filed a motion to suppress, ECF No. 13, which was terminated without decision when she was forced to withdraw from representation, ECF Nos. 25, 27.  None of Belton's subsequent attorneys attempted to renew the motion during the pretrial process, nor did Belton attempt to file one during the period in which he represented himself, despite the pretrial motions deadline lapsing during that period.  After standby counsel took over for Belton on the first day of trial, he requested that a motion to suppress to be heard during trial.  ECF No. 171 at

---

[5] Indeed, Belton expressly waived his speedy trial right in order to secure a trial continuance.  ECF No. 223 at 8:25-9:6.

[6] Belton also refers to March 26, 2014, ECF No. 288 at 19, but the Court specifically did not exclude time on that date.  ECF No. 12.

[7] 18 U.S.C. § 3162(a)(2) provides:  "Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismiss under this section."

27:9-29:9.  The Court denied the request, finding that Belton had not shown good cause for the failure to file a pretrial suppression motion.  *Id.* at 232:2-12 (citing *United States v. Wright*, 215 F.3d 1020, 1026 (9th Cir. 2000)); *see also* Fed. R. Crim. P. 12(b)(3)(C), (c)(3).

Belton's failure to challenge this ruling on direct review bars this claim now.  *See United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir. 1980) ("Hearst claims that the Tobin tape was the fruit of a Fourth Amendment violation and should have been suppressed.  The Government provided her a full and fair opportunity to raise this issue on direct appeal; therefore, it cannot be raised on collateral review.").  Belton may pursue this claim only by arguing that appellate counsel rendered ineffective assistance by failing to appeal this ruling.  *See id.* ("If the provided opportunity has been squandered due to defense counsel's incompetence or misconduct, a convict's only option on collateral review is a Sixth Amendment claim based on inadequate assistance of counsel.").  The Court addresses this issue below with respect to appellate counsel's performance.

### d.        Other Pretrial Rulings

Belton cites two other ways in which the Court purportedly erred in pretrial proceedings.  Even if Belton could surmount the procedural default bar, these conclusory allegations do not support a colorable claim.

First, Belton cites the Court's January 9, 2015 oral ruling vacating nunc pro tunc its January 5, 2015 order on Belton's prior counsel's motions to dismiss.  *See* ECF No. 223 at 13:13-14:8 (oral ruling); ECF No. 104 (vacated order).  Belton contends that the Court later "failed to uphold [its] own ruling that Defendant could file his own motions once he became pro se."  ECF No. 288 at 22 (citing *id.* at 285-86).  Belton does not identify any particular instance in which the Court denied Belton the ability to file a motion.  The Court did incorporate by reference the reasoning of the vacated January 5, 2015 order in denying Belton's subsequent motions, given that they raised materially identical arguments.  *See* ECF Nos. 114, 123.  But using that same reasoning to address Belton's pro se motions did not impinge on Belton's right of self-

representation.[8]

Second, Belton references the Court's decision at a May 8, 2015 hearing not to review a privileged email between Belton's investigator and standby counsel, in relation to Belton's judicial misconduct complaint. ECF No. 288 at 30 (citing ECF No. 145 at 7:1-8:11). Belton waived those privileges at the hearing. ECF No. 145 at 8:12-9:8. Although the Court did not allow Belton to distribute the document at the hearing, Belton attached what appears to be the same email to his May 19, 2015 judicial complaint, thereby presenting the document to the Court. ECF No. 142 at 46. The Court denied that motion on the merits. ECF No. 143.

### e.  Trial Rulings

Belton also disputes several trial rulings on evidentiary grounds. As a threshold matter, Belton has not shown that any of the purported evidentiary errors constituted "a fundamental defect which inherently results in a complete miscarriage of justice" so as to support federal habeas relief. *Lord*, 347 F.3d at 1094. Nor, even assuming the alleged errors were cognizable, does the record contain cause to overcome Belton's default. Finally, as described below, Belton cannot show prejudice because the claims lack merit.

Belton cites the rule of completeness a number of times, but he appears to refer to distinct discussions during the trial. Belton first cites a portion of a discussion where Belton's counsel sought to play certain audio recordings of the arresting officers' radio transmissions from the day of Belton's arrest. ECF No. 288 at 21, 83, 101; *see also* ECF No. 175 at 679:3-680:18. The Court ultimately sustained the government's objection that the recordings lacked foundation because the defense had not provided a sponsoring witness. ECF No. 175 at 687:6-22.[9] Belton has not shown

---

[8] Because, based on that same reasoning, the Court concludes that Belton's motions lacked merit, the Court also finds that Belton fails to demonstrate prejudice.

[9] In the course of the cited excerpt, the Court also referred to an earlier ruling. During Officer Phan's trial testimony, the government played certain audio recordings of Officer Phan's radio transmissions from the day of Belton's arrest. ECF No. 173 at 309:12-310:9, 314:2-11. Belton's counsel objected to the second recording on rule of completeness grounds. *Id.* at 314:14-25. The Court overruled the objection, reasoning in part that Belton "would have an opportunity to offer any other portions of that recording that [Belton] felt were relevant." *Id.* at 321:8-10. The defense failed to offer any such recordings in the presence of a sponsoring witness, such as during cross-examination of Officer Phan.

United States District Court
Northern District of California

1     that this ruling was error.

2          Belton also invokes the rule of completeness in referring to video footage taken by Officer

3     Jeager.  ECF No. 288 at 24.  According to Belton, his counsel created an edited portion of the

4     video to present at trial.  *Id.* at 27, 31.  Belton's counsel explained at trial that he did not want to

5     play the remainder of the 25-minute recording and that he objected to portions of the

6     government's minute-long clip on hearsay grounds.  ECF No. 173 at 371:8-13, 374:15-18.

7     Counsel and the prosecution ultimately stipulated to the admission of 20 seconds with audio.  *Id.*

8     at 379:17-380:1.  There was no error in admitting only this portion of the recording pursuant to

9     stipulation.  *Cf. United States v. Hayat*, 710 F.3d 875, 896 (9th Cir. 2013) ("Rule 106 'does not

10    compel admission of otherwise inadmissible hearsay evidence.'" (quoting *United States v.*

11    *Collicott*, 92 F.3d 973, 983 (9th Cir. 1996)).

12         Belton again raises a rule of completeness objection in reference to his counsel's cross-

13    examination of Officer Zhou.  ECF No. 288 at 62-63 (citing ECF No. 174 at 102).  Because the

14    recording was provided for the purpose of refreshing Officer Zhou's memory, ECF No. 174 at

15    542:12-543:11, it did not need to be played for the jury.  Moreover, given that the recording was

16    provided at Belton's counsel's request, there is no basis for Belton to raise an evidentiary

17    objection.  *Cf.* Fed. R. Evid. 612 (providing adverse party rights in relation to refreshing

18    materials).  To the extent that Belton challenges the Court's ruling that the recording could not be

19    played to the jury, ECF No. 174 at 542:25-543:5, this objection is meritless because the Court had

20    previously ruled that the recordings lacked foundation.

21         Belton also appears to invoke his Confrontation Clause right to cross-examine Officer

22    Jaeger regarding the officer's body-camera footage.  ECF No. 288 at 24.  Even assuming this

23    footage constituted the type of testimonial statement covered by the Confrontation Clause, *but see*

24    *United States v. Liera-Morales*, 759 F.3d 1105, 1109-11 (9th Cir. 2014), Belton identifies no

25    instance where the footage in question was introduced.  *Cf.* ECF No. 179 (exhibit list containing

26    recordings of Officers Buford, Zhou, and Kim).  Accordingly, the right Belton asserts simply was

27    not triggered.

28    / / /

United States District Court
Northern District of California

United States District Court
Northern District of California

#### f. Officer and Prosecutorial Misconduct

Belton generally references *Brady* throughout his motion but has not alleged cause or prejudice for failing to present a *Brady* claim on direct appeal.  Though lacking in specificity, Belton's *Brady* claims all relate to items he disputed in pretrial and trial proceedings.  *See, e.g.*, ECF No. 288 at 18 (grand jury testimony), 26 (materials related to motion to suppress); Because Belton argued for disclosure at the time, he cannot now claim that he did not discover any *Brady* noncompliance until after direct appeal.  *Cf. Mejia-Mesa*, 153 F.3d at 928.  Moreover, Belton's vague and unsubstantiated claims fail to show that the items were material or prejudicial.

Similarly, Belton faults the government for withholding state and federal work product related to charging decisions.  ECF No. 288 at 50-51.  This claim appears to be based on Belton's failed argument that the government violated the *Petite* policy by bringing a federal prosecution, in light of the prior state-court proceeding.  *See* ECF No. 92 at 9-11 (citing *Petite v. United States*, 361 U.S. 529 (1960) (per curiam)).  As the Court explained in denying Belton's motion to dismiss on this ground, the *Petite* policy is a Department of Justice "internal housekeeping rule[]" whose violation "does not entitle [a defendant] to dismissal of the indictment."  *United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979); *see also* ECF No. 104 at 2-3.  Therefore, even assuming that these documents were subject to *Brady*, *but see Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006), they were not material, nor was the failure to disclose them prejudicial.

Belton likewise claims that the government presented false evidence in the form of testimony from Officer Zhou, ECF No. 288 at 64, and a report from Officers Jaeger and Buford, *id.* at 19.  Belton does not explain what aspect of Officer Zhou's testimony was false, let alone "that (1) the testimony . . .  was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material."  *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (citing *Napue v. Illinois*, 360 U.S. 264, 269-71 (1959)).  Similarly, that the officers' handwritten report contains a crossed out "controlled substance" replaced by "marijuana less than 1oz," does not demonstrate actual falsity or any of the other necessary elements.  ECF No. 288 at 81.

Belton also contends that his arrest and prosecution were retaliation for his connection to a

13

1    2004 arrest of another man, which ultimately resulted in a successful § 1983 case, to which neither

2    Belton nor the officers involved here were parties.  ECF No. 288 at 62 (citing *Smith v. City of*

3    *Oakland*, 538 F. Supp. 2d 1217 (N.D. Cal. 2008)).  No evidence supports this claim.  The Court

4    therefore need not even reach the question whether such a claim is a cognizable basis for habeas

5    relief when there is sufficient evidence of probable cause and guilt.

6    ### D.    Ineffective Assistance of Counsel

7          Belton next argues that he received ineffective assistance of counsel from his four pretrial

8    attorneys, his standby counsel who conducted the trial, and his appellate counsel on direct appeal.

9    ### 1.    Legal Standard

10         Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*,

11   466 U.S. 668 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether

12   counsel's conduct so undermined the proper functioning of the adversarial process that the trial

13   cannot be relied on as having produced a just result."  *Id.* at 686.  In order to prevail on a claim of

14   ineffectiveness of counsel, a defendant must establish two factors.  First, the defendant must

15   establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of

16   reasonableness" under prevailing professional norms, *id.* at 687-88, "not whether it deviated from

17   best practices or most common custom," *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing

18   *Strickland*, 466 U.S. at 690).  "A court considering a claim of ineffective assistance must apply a

19   'strong presumption' that counsel's representation was within the 'wide range' of reasonable

20   professional assistance."  *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).

21         Second, a defendant must establish that he was prejudiced by counsel's deficient

22   performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional

23   errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A

24   reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

25   "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S.

26   at 112 (citing *Strickland*, 466 U.S. at 693).

27         To support an ineffective assistance of counsel claim, a defendant must "identif[y]

28   material, specific errors and omissions" by counsel.  *United States v. Molina*, 934 F.2d 1440, 1447

United States District Court
Northern District of California

14

1   (9th Cir. 1991); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations

2   which are not supported by a statement of specific facts do not warrant habeas relief.").

3               **2.      Pretrial Counsel**

4               Belton's specific complaints regarding his pretrial counsel largely involve their failure to

5   file particular motions or take other actions that Belton requested.  These claims fail in the first

6   instance because, after dismissing each of the four attorneys, Belton represented himself from

7   January 2, 2015, until June 22, 2015 – the first day of trial.  ECF No. 102; ECF No. 171 at 19:5-

8   10.  As the Ninth Circuit has explained, "[e]ven if [Belton's] pretrial counsel performed

9   deficiently during the [time they] represented [Belton] . . . he could have corrected those errors

10  once he decided to represent himself.  *Faretta* therefore precludes [Belton] from complaining

11  about the 'quality of his own defense.'"  *Cook v. Ryan*, 688 F.3d 598, 609 (9th Cir. 2012)

12  (footnote omitted); *see also United States v. Cochrane*, 985 F.2d 1027, 1029 (9th Cir. 1993) ("[A]

13  defendant who elects to represent himself cannot thereafter complain that the quality of his own

14  defense amounted to a denial of 'effective assistance of counsel.'" (alteration in original) (quoting

15  *Faretta v. California*, 422 U.S. 806, 834-35 n. 46 (1975)).

16              Even putting aside this fatal defect, Belton's underlying *Strickland* claims also lack merit.

17              Belton alleges that his pretrial attorneys each failed to file motions pursuant to *Franks v.*

18  *Delaware*, 438 U.S. 154 (1978), and *Gerstein v. Pugh*, 420 U.S. 103 (1975).  ECF No. 288 at 14,

19  23.  "Generally, a defendant claiming ineffective assistance of counsel for failure to file a

20  particular motion must not only demonstrate a likelihood of prevailing on the motion, but also a

21  reasonable probability that the granting of the motion would have resulted in a more favorable

22  outcome in the entire case."  *Styers v. Schriro*, 547 F.3d 1026, 1030 n.1 (9th Cir. 2008).

23              *Franks* provides a defendant "the right to challenge the veracity of statements made in

24  support of an application for a search warrant" on the basis that the officer intentionally or

25  recklessly made false or misleading statements or omissions necessary to the finding of probable

26  cause.  *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017).  A *Franks* motion would

27  have been inapposite here because no search warrant was issued.  *See United States v. Carey*, 836

28  F.3d 1092, 1099 n.6 (9th Cir. 2016) (explaining that request for evidentiary hearing did "not fit

United States District Court
Northern District of California

15

1   into the *Franks v. Delaware* . . . framework because the [challenged] declaration was not an

2   affidavit supporting a wiretap application").

3          *Gerstein*, in turn, entitles an arrestee to "a timely judicial determination of probable cause

4   as a prerequisite to detention." 420 U.S. at 126; *see also County of Riverside v. McLaughlin*, 500

5   U.S. 44, 56 (1991). Nonetheless, "a conviction will not be vacated on the ground that the

6   defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420

7   U.S. at 119. In the Ninth Circuit, "the appropriate remedy for a [*Gerstein*/]*McLaughlin* violation

8   is the exclusion of the evidence in question – if it was 'fruit of the poisonous tree.'" *Anderson v.*

9   *Calderon*, 232 F.3d 1053, 1071 (9th Cir. 2000), *overruled on other grounds by Osband v.*

10  *Woodford*, 290 F.3d 1036 (9th Cir. 2002). Belton cites no evidence obtained as a result of any

11  allegedly improper detention. *See id.* ("[T]his test protects the arraignment right in question by

12  barring any exploitation of the delay that causally produces a statement."). Even assuming for

13  argument's sake that the motion should have been filed and would have been successful, it would

14  not have provided any grounds for dismissing the charges or even suppressing evidence. *Navarro*

15  *v. Curry*, No. 08-cv-0241-WHA (PR), 2010 WL 4066322, at *6 (N.D. Cal. Oct. 14, 2010) ("Here,

16  there is no indication in the record of any evidence that was obtained by the state as a result of the

17  alleged pre-arraignment delay, rendering the available remedy useless."). It therefore provides no

18  basis to conclude that Belton's "sentence was imposed in violation of the Constitution or laws of

19  the United States." 28 U.S.C. § 2255(a).

20         Belton also contends that two of his attorneys were ineffective for failing to file a motion

21  for a bill of particulars under *Blockburger v. United States*, 284 U.S. 299 (1932). ECF No. 288 at

22  59-60 (citing ECF No. 52 at 25:5-17). Belton posits that this motion "would have excluded th[e]

23  superseding indictment." *Id.* at 60. Belton is mistaken. Because the superseding indictment was

24  filed prior to trial or any other disposition of the original indictment, Belton could not advance a

25  double jeopardy argument on that basis. *See United States v. Stoltz*, 720 F.3d 1127, 1131 (9th Cir.

26  2013) ("Jeopardy attaches only when a jury is empaneled and sworn, or in the case of a non jury

27  trial, when the court begins to hear evidence."); *United States v. Castiglione*, 876 F.2d 73, 76 (9th

28  Cir. 1988) ("We conclude that the dismissal here of the original indictment with prejudice does

United States District Court
Northern District of California

16

1    not bar further prosecution on identical counts in the superseding indictment.").  An argument

2    premised on Belton's state prosecution was similarly doomed.  *See United States v. Lucas*, 841

3    F.3d 796, 803 (9th Cir. 2016) (explaining that "'it is extremely difficult and highly unusual' for a

4    defendant to show that a prosecution by one government was a 'tool, a sham or a cover for the

5    other government'" so as to avoid the separate sovereigns doctrine (quoting *United States v.

6    Figueroa-Soto*, 938 F.2d 1015, 1019 (9th Cir. 1991)).

7         Belton's remaining deficiency arguments relate to pretrial counsel's failure to subpoena

8    various witnesses, including the arresting officers and Alfred Beals.  ECF No. 288 at 23-24, 59.

9    However, Belton chose to represent himself for the roughly six months leading up to trial.  ECF

10   No. 102.  As such, subpoenaing witnesses for trial was Belton's responsibility – not that of his

11   discharged pretrial counsel.  *Cf. Cook v. Schriro*, 538 F.3d 1000, 1016 (9th Cir. 2008) ("The

12   record is clear, however, that Cook was aware of Matzke's intoxication, and Cook's own choice of

13   cross-examination questions cannot be imputed to his former counsel.").  In addition, Belton fails

14   to identify any specific information those witnesses could have provided that would have altered

15   the outcome of the proceedings.

16        In sum, even if Belton's pretrial ineffective assistance claims were cognizable, the Court

17   would reject them.

18              **3.    Trial Counsel**

19   Belton next argues that his trial counsel, who served as standby counsel until the first day of trial

20   rendered ineffective assistance by submitting into evidence an excerpted version of officer body

21   camera footage.  ECF No. 288 at 26-27.  Counsel chose not to play the whole tape, despite

22   Belton's expressed preference that he do so.  ECF No. 173 at 128:22-24.  This was a reasonable

23   decision, in light of hearsay concerns and the possibility that additional video of Belton's arrest

24   would do more harm than good, and particularly given the deference with which the Court views

25   counsel's tactical decisions at trial.  *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001)

26   ("In determining whether the defendant received effective assistance of counsel, we 'will neither

27   second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but

28

United States District Court
Northern District of California

1   rather, will defer to counsel's sound trial strategy." (quoting *Strickland*, 466 U.S. at 688)).[10]

2   Appellate Counsel

3        A thorough review of Belton's pro se pleadings reveals that his motion consists almost

4   exclusively of claims not raised on direct appeal.  Because those claims were meritless, as

5   explained above, appellate counsel was not deficient for declining to raise them, nor was Belton

6   prejudiced.  *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's

7   failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would

8   not have provided grounds for reversal."); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989)

9   ("In many instances, appellate counsel will fail to raise an issue because she foresees little or no

10  likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized

11  as one of the hallmarks of effective appellate advocacy.").

12       As noted above, appellate counsel did not appeal the Court's determination that Belton

13  lacked good cause for filing an untimely motion to suppress.  ECF No. 171 at 232:2-12; *see also*

14  Fed. R. Crim. P. 12(b)(3)(C), (c)(3).  "The decision whether to grant relief from a Rule 12 waiver

15  'lies in the discretion of the district court.'"  *United States v. Anderson*, 472 F.3d 662, 669 (9th

16  Cir. 2006) (quoting *United States v. Tekle*, 329 F.3d 1108, 1113 (9th Cir.2003)).  Given that

17  Belton had control over his own defense when the pretrial motion deadline came and went, and the

18  lack of a convincing showing of good cause, appellate counsel could reasonably have decided to

19  focus her efforts elsewhere.[11]

20       Finally, Belton's "conclusory suggestions" that appellate counsel failed to review records

21  likewise do not entitle him to an evidentiary hearing or habeas relief.  *Jones v. Gomez*, 66 F.3d

22  199, 205 (9th Cir. 1995); ECF No. 288 at 26, 28.  On reply, Belton submitted exhibits of email

23  correspondence between himself and counsel.  ECF No. 311 at 49-62.  These communications do

24

25  _____

    [10] Belton also relies on an out-of-context quote in which trial counsel stated:  "I'm new here,
26  which you can obviously see, because a lot of times I don't know the policies and procedures as
    well as I would like."  ECF No. 288 at 93.  This does not establish that counsel was deficient.

27  [11] Nor has Belton shown that, had he demonstrated good cause for his untimely motion, the
28  motion was also likely to succeed and would have a reasonable probability of leading to a different
    result.  *See Styers*, 547 F.3d at 1030 n.1.

United States District Court
Northern District of California

not support Belton's contentions.  Rather, they reveal that counsel was reviewing the record, researching various avenues, and chose certain arguments over the other ones that Belton suggested, many of the latter of which were meritless for the reasons explained above.  *See Miller*, 882 F.2d at 1434 ("[A] lawyer who throws in every arguable point – 'just in case' – is likely to serve her client less effectively than one who concentrates solely on the strong arguments.").

### E.        Intervening Law

In addition to his reply brief, Belton submitted an additional "motion" raising new arguments to vacate his sentence.  ECF No. 313.  The Court "generally disfavors arguments raised for the first time on reply," *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018), and looks even less favorably on additional reply briefs filed without leave.  Nonetheless, the Court will address the arguments in light of Belton's pro se status.

Belton relies on a trio of recent Supreme Court cases, all of which are inapposite.  First, Belton attacks his conviction for violating 18 U.S.C. § 924(c)(1)(A), which imposes additional penalties for using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime."  Belton cites *United States v. Davis*'s holding that 18 U.S.C. § 924(c)(3)(B)'s definition of "crime of violence" is unconstitutionally vague.  139 S. Ct. 2319, 2336 (2019). *Davis* is irrelevant to Belton's § 924(c)(1)(A) conviction because Belton was found guilty of "using and carrying a firearm during and in relation to possession of cocaine and cocaine base," ECF No. 178 at 32, i.e., a "drug trafficking crime," 18 U.S.C. § 924(c)(1)(A).

Second, *Rehaif v. United States*, 139 S. Ct. 2191 (2019), addressed the knowledge requirement of § 924(a)(2), which imposes additional penalties on an individual who "knowingly violates" § 922(g), among other provisions.  Belton was neither charged nor convicted under § 924(a)(2).  Because § 922(g) itself imposes no knowledge requirement, *Rehaif*'s holding does not affect Belton's conviction under § 922(g)(1).

Finally, Belton points to the Supreme Court's recent grant of certiorari in *United States v. Shular*, 736 F. App'x 876, 877 (11th Cir. 2018), *cert. granted*, No. 18-6662, 2019 WL 2649851 (U.S. June 28, 2019).  *Shular* concerns the definition of "serious drug offense" for prior state drug

19

convictions under § 924(e), another provision that does not apply to Belton's case.  736 F. App'x at 877; *see also* 18 U.S.C. § 924(e)(ii).  The Supreme Court's decision to grant certiorari has no impact on the merits here.

The Court therefore rejects these newly raised arguments as well.

**F.      Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  28 U.S.C. § 2255 R. 11(a).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

As reasonable jurists would not "find it debatable whether the petition states a valid claim of the denial of a constitutional right," the Court denies a certificate of appealability.  *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

## CONCLUSION

For the foregoing reasons, the Court denies Belton's motion to vacate his sentence under 28 U.S.C.  § 2255 and declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Dated:  September 26, 2019



JON S. TIGAR
United States District Judge