

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

JUL -7 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARCUS BELTON,

    Defendant.

Case No. 14-cr-00030-JST-1

**Informal Brief to Reconsider Order[1]**
**[ECF Nos. 316 -09/26/2019] and In**
**Alternative Grant Certificate of**
**Appealability**



    Defendant Marcus Belton's submits informal brief to RECONSIDER ORDER [ECF 316] and in Alternative GRANT CERTIFICATE OF APPEALABILTY for motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 288.

    Defendant will show that reasonable jurists would find the Court's decision on the merits to be debatable or wrong United States v. Hunt E.D.Cal. Nov. 7, 2019, No. 1:13-cr-00189-LJO.

    The petitioner will now show that his pre-trial Counselor, trial Counselor, and direct Appeal Counselor, all fail to adhere to Belton's request on issues of arguable merit and other pertinent facts of this case as set forth in prior post-conviction request Id in the records; Due process rights and therefore admissible (quoting Beech Aircraft Corp. v. Rainer, 488 U.S. 153, 172, 109 S. Ct. 2 Ed 455

    On November 20, 2014, BELTON was charged in a four-count Superseding Indictment with being a felon in possession of a firearm and ammunition in violation

---

[1] DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE ECF Nos. 288, 313.

of 18 U.S.C. §922(g)(1) [Count 1]; possession with intent to distribute cocaine base within 1,000 feet of a school in violation of 21 U.S.C. §860(a) [Count 2]; possession with intent to distribute cocaine within 1,000 feet of a school in violation of 21 U.S.C. §860(a) [Count 3]; and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. 924(c)(1)(A) [Count 4].

Following a hearing on January 2, 2015, the court permitted BELTON to represent himself at trial. Standby counsel was appointed to assist BELTON on March 23, 2015. On June 22, 2015, immediately before the start of voir dire, BELTON indicated that he could not represent himself at trial. Standby counsel agreed to try the case. Counsel's request for a brief continuance was denied.

## STATEMENT OF FACTS

On October 14, 2013, at approximately 6:15 p.m., Defendant Marcus Belton ("Mr. Belton"' was sitting in the passenger front seat of a Toyota Corolla near a barber shop on the 8400 block (north side) of International Boulevard in Oakland, California. See Transcript of Preliminary Hearing in Alameda County Superior Court (hereafter "R.T."), attached hereto as Exhibit B; Vol. 3 at 13:19-23.

Mr. Belton's wife, Krystal Sipp, was sitting in the driver seat. The two were waiting for Mr. Belton's barber - Cornelius Johnson - to arrive so that Mr. Belton could get a haircut.

With no warning whatsoever, Officer Yun Zhou ("Ofc. Zhou") of the Oakland Police Department appeared at the passenger window. Mr. Belton immediately asked Ofc. Zhou what was going on and attempted to show Zhou his identification. Ofc. Zhou refused to accept his identification and grabbed Belton's right wrist, forcefully ordered Mr. Belton out of the car, handcuffed him, and placed him under arrest. Id.; Exh. B; R.T. Vol. 3 at 16:8-17:13; Oakland Police Department Crime Report, attached hereto as Exhibit C; BLTN-011 2.

Mr. Belton was charged for drug related charges in CA State Court and was granted bail.

Mr. Belton alleges that (1) gun was planted on him (he never possessed gun on him / in his waistband as alleged); (2) drugs were planted on him; and (3) drug transactions never happened (he never sold drugs to any person as alleged).

As soon as he came out on bail, this new case in Federal Court was filed with gun related charges.

Mr. Beltons' second Attorney is ready to go on oath and certify that he discussed the issue of double jeopardy with opposing counsel and was informed that USAG did not take proper authorization ( as mandated by memorandum/ instructions) from AG of USA to initiate duplicate proceedings in Federal Court when State Court proceedings are already initiated.

In Federal Court, WITHOUT the permission and authorization of Mr. Belton, Belton's first Attorney admitted the presence of gun. A motion for evidentiary hearing was pending in the Court and which was dismissed by Court as soon as Belton hired Second Attorney.

Mr. Belton hoped and believed that Second and Third Attorney will challenge the presence of gun. But non did. Due to these conflicts Mr. Belton had to change his Attorneys and go pro se from time to time.

As Mr. Belton was in throughout in custody he was totally disadvantaged (no law library/ no paralegal / no trained librarian) and ended up in Trial with standby Counsel. All counsels were against Mr. Belton to even challenge the presence of gun. This was different from the state court proceedings where all Attorneys [when even when gun charges were not initiated,] they asked questions from witness who confirmed no-presence of gun.

Mr. Belton, shocked by the events, repeatedly asked why he was being detained or arrested. Id. Neither Zhou nor the other five OPD officers involved in the arrest responded. Mr. Belton later learned that he was arrested for purportedly selling marijuana.

Mr. Belton asserts that he had not been selling drugs or marijuana on International Boulevard as described in the OPD police reports.

As a result of these observations, BELTON was arrested, and the car was searched. A loaded handgun was found in BELTON's waistband. Inside the car, officers found a which contained 69 twists of cocaine base, 2 large chunks of cocaine base, 29 twists of powder cocaine, 5 green ecstasy pills, and a small bag of marijuana. A digital scale, sandwich bags, lactose powder, money, and a second magazine for the handgun were also located in the car. The location where the arrest was made was determined to be less than 1,000 feet from a nearby elementary school.

# I. PROSECUTORS' OBLIGATION AND PROSECUTORIAL MISCONDUCT

Belton pleads that Prosecutor failed make reasonable efforts in its obligation of disclosure and is subject to discipline for ordering, ratifying or knowingly failing to correct discovery violations

> ### Vol 1 pg 11 of 235 of Jury Trial Transcripts
> THE COURT: Off the bench, the Court has had an
> opportunity to conduct a very brief review of the law. And on
> the basis of that review, **the Defendant's request for a
> continuance is denied.**
> And moreover, I would say that my comments regarding the
> **prosecutor's obligation** appear not have been well-founded,
> pursuant to United States versus Dominguez Villa, 954 F.2d 562
> at Page 566, a Ninth Circuit case from 1992 -- and I would ask
> members of the audience not to talk while court is in
> session -- the Government, the Assistant United States Attorney
> **does not have an obligation to obtain or review materials under**

*the control of state agencies, including the San Pablo Police
Department.*

*Had Mr. Belton wanted to have the Court perform a review
of those materials pursuant to the Henthorn case -- Madam
Reporter, H-E-N-T-H-O-R-N -- he had the opportunity while the
case was pending to serve a subpoena on the police department.*

*In any event, all that appears to have happened here is
that the United States Attorney's office came into possession
of information about one of its witnesses, and it immediately
turned that information over to the Defendant. And the issue
has been raised to me. And the Government has offered to make
the witness available for voir dire on Wednesday.*

*Based on my hasty review of the law, I conclude that that
procedure is adequate under the law to protect the Defendant's
due-process rights. And so I will deny the request for a
continuance.*

*MR. BELTON: Thank Your Honor.*

*THE COURT: Thank you. Now I'm going to pass this
case. Mr. Belton, we're going to -- I'm required by the rules
to have the Marshals' office return you to your holding cell.
No jurors will come in while that's here -- excuse me, while
you are in the holding cell, and we won't talk about your case.
I'm going to call this other case, the civil case. I have
to continue it. And so I'll deal with that, and then I'll
recall your case, and you'll come back out.*

*MR. BELTON: Okay. Just briefly, can I respond on
the record to object to that? Because Your Honor, I -- you
said I had a chance to file a Henthorn motion. How would I
have known to do that, if this information was just brought to
me?*

*And then again, on the other officers that I've been, over
three attorneys, filing Henthorn information. And we still
haven't received that, on the seven Oakland Police Officers.
So again and again, I'm being denied my due-process rights.*

*THE COURT: Thank you, Mr. Belton. Your comments are
now part of the record.*

*Vol 1 pg 26 of 235 of Jury Trial Transcripts*
*MR. FITZPATRICK: I understand that. But I do think*

*I should make a more -- perfect the record just in the*
*abundance of caution.*
*As to the issue with Detective Zink, I had no knowledge of*
*this before Friday. I could do nothing to change the posture*
*of this case before this morning. I came into court not to ask*
*that they go get the personnel record. I ask for a continuance*
*so that I could subpoena the personnel record, because I think*
*that that will be Brady material, and I think that that is the*
*type of thing that Mr. Belton's defense necessitates. So that*
*would be my first request. And I renew that, now that I'm the*
*attorney of record.*
*THE COURT: Your request for a continuance is denied.*

On September 8, 2014 the **ABA released Formal Ethics Opinion #467**
dealing with the Managerial and Supervisory Obligations of Prosecutors Under
**Rules 5.1 and 5.3.** The opinion begins by noting that prosecutors **"must 'make**
**timely disclosure to the defense' of exculpatory and mitigating evidence"**
[emphasis added], contrary to the familiar prosecutorial mantra that "impeachment
material is not Brady."

The opinion makes clear that "supervisors who directly oversee **trial**
**prosecutors must make reasonable efforts to ensure that those under their**
**direct supervision meet their ethical obligations of disclosure, and are**
**subject to discipline for ordering, ratifying or knowingly failing to correct**
**discovery violations**," noting that "reports, court opinions, and other authorities
have drawn attention to prosecutorial misconduct . . . [that] suggest a need for more
guidance." The opinion goes on to recommend the establishment of office-wide
policies, training, supervision, and the creation of a "culture of compliance."

*The Supreme Court, in Cone v. Bell, 556 U.S. 449, 129 S. Ct. 1769, 173*
*L. Ed. 2d 701 (2009), recently noted:*
*Although the Due Process Clause of the Fourteenth Amendment, as*
*interpreted by Brady, only mandates the disclosure of material evidence, **the***
***obligation to disclose evidence favorable to the defense may arise more***

*broadly under a prosecutor's ethical or statutory obligations.* See Kyles, *514 U.S. at 437 ("[T]he rule in Bagley (and, hence, in Brady) requires less of the prosecution than the ABA Standards for Criminal Justice Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993)"). See also ABA Model Rule of Professional Conduct 3.8(d) (2008)("The prosecutor in a criminal case shall" "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the [\*1153] guilt of the accused or mitigates the offense, and, in connection [\*\*63] with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal").*

(*United States v. Harmon* (D.N.M. 2012) 871 F.Supp.2d 1125, 1152-1153.)

Trial Court clearly violated due process rights under duly noted objection of Mr. Belton.

## II.    PROSECUTORIAL MISCONDUCT – TIMING OF DISCLOSURE

> ***Vol 1 pg 26 of 235 of Jury Trial Transcripts***
> *MR. FITZPATRICK: I understand that. But I do think*
> *I should make a more -- perfect the record just in the*
> *abundance of caution.*
> *As to the issue with Detective Zink, I had no knowledge of*
> *this before Friday. I could do nothing to change the posture*
> *of this case before this morning. I came into court not to ask*
> *that they go get the personnel record. I ask for a continuance*
> *so that I could subpoena the personnel record, because I think*
> *that that will be Brady material, and I think that that is the*
> *type of thing that Mr. Belton's defense necessitates. So that*
> *would be my first request. And I renew that, now that I'm the*
> *attorney of record.*
> *THE COURT: Your request for a continuance is denied.*

The obligation of the prosecution to disclose evidence under Brady v. Maryland can vary depending on the phase of the criminal proceedings and the evidence at issue. As a general matter, "[s]ome limitation on disclosure delay is necessary to protect the principles articulated in Brady v. Maryland." United States v. Burke, 571

F.3d 1048, 1054 (10th Cir. 2009). The Tenth Circuit has recognized that _**"[i]t would eviscerate the purpose of the Brady rule and encourage gamesmanship [\*\*52] were we to allow the government to postpone disclosures to the last minute, during trial."**_ **_United States v. Burke_**, 571 F.3d at 1054. "[T]he belated disclosure of impeachment or exculpatory information favorable to the accused _**violates due process**_ when an 'earlier disclosure would have created a reasonable doubt of guilt.'" United States v. Burke, 571 F.3d at 1054. As the Tenth Circuit has stated:

Where the district court concludes that the government was dilatory in its compliance with Brady, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial. (United States v. Harmon (D.N.M. 2012) 871 F.Supp.2d 1125, 1149.)

## III.   PROSECUTOR DID NOT FOLLOW DUAL AND SUCCESSIVE PROSECUTION POLICY ("PETITE POLICY")

This policy establishes guidelines for the exercise of discretion by appropriate officers of the Department of Justice in determining whether to bring a federal prosecution based on substantially the same act(s) or transaction(s) involved in a prior state or federal proceeding.

See Rinaldi v. United States, 434 U.S. 22, 27 (1977); Petite v. United States, 361 U.S. 529 (1960). Although there is no general statutory bar to a federal prosecution where the defendant's conduct already has formed the basis for a state prosecution, Congress expressly has provided that, as to certain specific offenses, a state judgment of conviction or acquittal on the merits shall be a bar to any

subsequent federal prosecution for the same act or acts. See 18 U.S.C. 659, 660, 1992, 2101, 2117; 15 U.S.C. 80a–36, 1282.

NONE of the following three substantive prerequisites were met NOR approval was granted for the initiation or a continuation of a prosecution governed by this policy.

A. **The first substantive prerequisite is that the matter must involve a substantial federal interest**. This determination will be made on a case-by-case basis, applying the considerations applicable to all federal prosecutions. See Principles of Federal Prosecution, USAM 9-27.230. Matters that come within the national investigative or prosecutorial priorities established by the Department are more likely than others to satisfy this requirement.

Prosecuting Attorney failed to provide evidence that this is a matter of national investigative or prosecutorial priorities. For argument sake, if prosecuting Attorney says that it was national investigative / prosecutorial priorities, this fails on the ground that unlawful electronic or other surveillance was carried out and nothing was provided to Mr. Belton to prepare his defense.

B. **The second substantive prerequisite is that the prior prosecution must have left that substantial federal interest demonstrably unvindicated.** In general, the Department *will presume* that a prior prosecution, regardless of result, has vindicated the relevant federal interest.

What appears on the surface to be a blatant exercise of judge shopping, that in theory smacks of double jeopardy, is justified [*391] by the government on the basis of what has come to be known as the Petite Policy, a procedure of the Department of Justice ("DOJ" or "the Department") **that was**

**severely criticized** by this Court in **United States v. Grimes**, 641 F.2d 96, 100-104 (3d Cir. 1981) (Adams and Sloviter, Circuit Judges, Knox, District Judge).

The Petite Policy allows the Department, in certain circumstances, to institute a federal prosecution based on substantially the same act(s) or transaction(s) involved in a prior state or federal proceeding where the defendant has previously prevailed. See Rinaldi v. United States, 434 U.S. 22, 27, 54 L. Ed. 2d 207, 98 S. Ct. 81 (1977); Petite v. United States, 361 U.S. 529, 4 L. Ed. 2d 490, 80 S. Ct. 450 (1960).

Moreover, there has been **_action by Congress subsequent to this Court's 1981 decision in Grimes_** that has relevance here.

> *In 1996, Congress amended 28 U.S.C. § 2254 to provide:*
>
> *(d.) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the [\*\*34] merits in State court proceedings unless the adjudication of the claim*
>
> *(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.*

The Court has explained: "Congress specifically used the word '**_unreasonable_**,' and not a term like 'erroneous' or 'incorrect.' Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent [\*396] judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000); see also Bell v. Cone, 535 U.S. 685, 694, 152 L. Ed. 2d 914, 122 S. Ct. 1843 (2002) ("The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one.") (emphasis added); see also Brown v. Payton, 161 L. Ed. 2d 334, 544 U.S. 133, 125 S. Ct. 1432 (2005) [**35] (recent decision of the United States Supreme Court affirming this principle). (United States v. Wilson (3d Cir. 2005) 413 F.3d 382, 395-396.)

Mr. Belton pleads that this court has jurisdiction under Under § 2254 to review the federal double jeopardy and give relief.

C. **The third substantive prerequisite** is that the government must believe that the defendant's conduct constitutes a federal offense, and that the admissible evidence probably will be sufficient to obtain and sustain a conviction by an unbiased trier of fact. This is the same test applied to all federal prosecutions.

As the ATF / Oakland Police Department initiated a prior state prosecution, regardless of result, has vindicated the relevant federal interest. At the filing in State Court prosecution Attorney believed that State Judge is unbiased trier of fact. Therefore, govt fails in this test as well.

See Principles of Federal Prosecution, USAM 9-27.200 et seq. This requirement turns on the evaluation of the admissible evidence that will be available at the time of trial. The State Court after evaluating all evidence did give bail to Mr. Belton.

The possibility that, despite the law and the facts, the fact-finder may acquit the defendant because of the unpopularity of some factor involved in

the prosecution, or because of the overwhelming popularity of the defendant, or his or her cause, *is not a factor that should preclude a proposed prosecution.* The fact that Mr. Belton received bail was the only guiding force behind this double jeopardy and falls short of this policy as well as congress intention.

**D. Procedural prerequisite for Bringing a Prosecution Governed by This Policy.**

This policy mandates that whenever a substantial question arises as to whether this policy applies to a prosecution, *the matter should be submitted to the appropriate Assistant Attorney General for resolution.* Prior approval from the appropriate Assistant Attorney General must be obtained before bringing a prosecution governed by this policy.

*SER00067-68 PG 72-73 of 258*
*MR. VAUGHNS: YOUR HONOR, MAY I SAY ONE THING BEFORE*
*HE RESPONDS TO THAT? HE AND I HAD A DISCUSSION LAST WEEK, AND I*
*THINK AT SOME POINT HE INDICATED TO ME THAT HE WAS GOING TO HIRE*
*ANOTHER ATTORNEY FROM SAN FRANCISCO. AND THAT THERE MAY BE AN*
*OCCASION WHERE I MIGHT BE A WITNESS ON HIS BEHALF IN SOME*
*CONTEXT IN THE FUTURE.*
*I'M NOT AT LIBERTY TO SAY EXACTLY HOW THAT MIGHT COME*
*ABOUT, **BUT I KNOW THAT WAS AN ISSUE HE AND I DISCUSSED**. AND I*
*TOLD HIM I'D BE HAPPY TO ASSIST HIM IN THAT MANNER. SEPARATE*
*AND APART --*
*THE COURT: HOW ARE YOU GOING TO BE A WITNESS IN THIS*
*CASE? WERE YOU AT THE SCENE WHEN HE WAS ARRESTED?*
*MR. VAUGHNS: OF COURSE NOT. I WAS NOT THERE AT THE*
*SCENE. **I THINK HIS CONCERN IS THAT THERE'S A TECHNICAL***
***VIOLATION OF PROCEDURES INVOLVING MR. KUMAR AND MR. KUMAR'S***
***OFFICE THAT HE THINKS I MIGHT HAVE INFORMATION ABOUT.***
***AND THAT MIGHT ACTUALLY BE TRUE.** WHETHER OR NOT THAT*
*IS TRUE OR NOT, THAT'S WHERE HE THINKS THE CASE SHOULD GO. I,*
*OF COURSE, DISAGREE WITH THAT IN TERMS OF ITS EFFECTIVENESS ON*
*HIS ULTIMATE DISPOSITION.*

Court must dismiss any prosecution governed by this policy *__as prior approval/ retroactive approval was not obtained.__*

Mr. Belton pleads from *__dissent__* of recent Supreme Court case:

> *Given all this, it might seem that Mr. Gamble should win this case handily. Alabama prosecuted him for violating a state law that "prohibits a convicted felon from possessing a pistol" and sentenced him to a year in [\*\*363] prison. But then the federal government, apparently displeased with the sentence, charged Mr. Gamble under 18 U. S. C. §922(g)(1) with being a felon in possession of a firearm based on the same facts that gave rise to the state prosecution. Ultimately, a federal court sentenced him to 46 months in prison and three years of supervised release. Most any ordinary speaker of English would say that Mr. Gamble was tried twice for "the same offence," precisely what the Fifth Amendment prohibits. Tellingly, no one before us doubts that if either the federal government or Alabama had prosecuted Mr. Gamble twice on these facts and in this manner, it surely would have violated the Constitution.*
>
> *So how does the government manage to evade the Fifth Amendment's seemingly plain command? On the government's account, the fact that federal and state authorities split up the prosecutions makes all the difference. Though the Double Jeopardy Clause doesn't say anything about allowing "separate [\*\*\*84] sovereigns" to do sequentially what neither may do separately, the government assures us the Fifth Amendment's phrase "same offence" does this work. Adopting the government's argument, the Court supplies the following syllogism: "[A]n 'offence' is defined by a law, and each law is defined by a sovereign. So where there are two sovereigns, there are two laws, and two 'offences.'" Ante, at ___ - ___, 204 L. Ed. 2d, at 327-328.*

(*Gamble v. United States*) (2019) ___U.S.___ [139 S.Ct. 1960, 1997, 204 L.Ed.2d 322, 362-363].)

## IV.  DEFENDANT WITNESS LIST WAS DENIED

[Exb F] Mr. Belton SER00318-319 pg 72-73 of 254 particularly requested for following persons to be called/ summoned as witness.

Court did note the comments on record, but failed to summon any of them

> THE DEFENDANT: YES, JUST BRIEFLY. I WOULD LIKE TO JUST
> GET ON THE RECORD BECAUSE I'VE BEEN HAVING PROBLEMS WITH GETTING
> THIS TOGETHER. THE DEFENDANT'S WITNESS LIST TO BE SUBPOENAED IS
> DEPUTY PUBLIC DEFENDER RACHEL MARSHALL; ATTORNEY AT LAW, MARLIN
> MONROE; ATTORNEY AT LAW, JAMES PHILLIP VAUGHNS; PRIVATE
> DETECTIVE DENNIS A. YOUNG; MY BARBER, CORNELIUS JOHNSON;
> CRIMINALIST WILHELMINA DO (PHONETIC), AND MY WIFE CRYSTAL SILL
> (PHONETIC).
> ALSO THE SUBPOENA TO PRODUCE STATE LAW ENFORCEMENT PERSONNEL
> COMPLAINTS ON OFFICERS GEORGE BUFORD, PATRICK PHAN, YAN ZHOU,
> OFFICER KIM, OFFICER JAEGER, OFFICER RAY WARD AND OFFICER BAKER.
> THE COURT: OKAY. THOSE COMMENTS ARE NOTED FOR THE
> RECORD.

## V.  DEFENDANT WANTED TO TESTIFY

To put the RECORD straight, THROUGHOUT before Trial and during Trial, Defendant wanted to testify. Repeatedly, Trial Judge ignored each and every request to speak, object and testify.

For arguments sake, even if record is not clear (as per Appeals Attorney, WHY DID TRIAL JUDGE NOT EVEN ONCE IN 1000s' OF PAGE OF TRANSCRIPT ASKED AND CLARIFIED FROM BELTON IF HE WANTED TO TESTIFY.

The only discussion and offer to Belton for Testimony was as question and answer to which BELTON never refused.

*On Vol 1 page 19-20 of 235 of Jury Trial Transcripts* Court directed as follows:

MR. BELTON: And I would like, at this point now I'm going to hand the case over to Peter, **because this is out of my realm, and I'm going to let him take over.**

THE COURT: **You are advising the Court now that you wish to be represented in this trial by Mr. Fitzpatrick?**

MR. BELTON: **Yes.**

THE COURT: Do you remember last week when we conducted a pretrial conference in your case and we discussed the possibility that Mr. Fitzpatrick might represent you in the trial? Do you remember our prior discussion?

MR. BELTON: Not really. We discussed lot of things that day, so...

THE COURT: We did. I just want to go over a few of the things that I said that day so that they are clear in your mind.

First, and most importantly, I told you then, and I tell you now, that it is your right to have Mr. Fitzpatrick act as your lawyer at this trial. And I will acknowledge that Mr. Fitzpatrick is doing so under somewhat trying circumstances. He, I know, wanted a continuance if he was going to have to represent you and I denied – effectively denied that request last week. And that is not owing to my decisions he made. That's owing to other events that happened earlier in the case. But I look forward to his representation of you and his advocacy in court.

Once he begins to represent you, <u>he represents you for all purposes,</u> and that means that he will conduct any -- he will conduct any sidebar conferences that we have. He'll make any motions that need to be made. He'll give the opening statement in the case. He'll give the closing argument. And he will conduct any witness examinations that need to be made. <u>**And unless and until you waive your right not to testify and voluntarily elect to testify on your behalf, you will no longer address the Court.**</u> Do you understand that?

MR. BELTON: **So you're telling me I don't have the right to object** if I see something wrong?

..........................................................

MR. FITZPATRICK: Thank you, Your Honor.

*Mr. Belton has a concern obviously, as he's stated, about*
*his ability to preserve his rights or his objections as to*
*various factual or procedural issues.*
*What I posited to him was that if he wrote everything*
*down, I ask the Court for permission the end of hearing so we*
*didn't interrupt the trial as it went forward for me to make a*
*record as to any objections that he had. **And I'll make an***
***objection for the record if the Court would allow that.***
*THE COURT: That seems like a very sensible solution*
*to this issue.*
*Mr. Kumar, do you want to be heard?*
*MR. KUMAR: No opposition, Your Honor.*
*...................................*
*THE COURT: So Mr. Belton, I will order that. And*
*that is, for a clear record, Mr. Fitzpatrick's not your lawyer*
*yet but if in a moment you said that he is going to represent*
*you, if you felt that an objection needed to be made during the*
*trial and Mr. Fitzpatrick was not making the objection, you*
*could write your objections down and then Mr. Fitzpatrick could*
*present them orally when the jury was not here, but they would*
*be part of the transcript. And you could even file them with*
*the Court as court exhibits, so that any reviewing court could*
*see the objections that you'd made.*

Clearly at this point, both Court and Mr. Belton acknowledged that, Mr. Belton was not a PRO SE anymore and Mr. Belton RETAINED RIGHT TO TESTIFY, (to be decided by his Attorney.)

### A. Before Trial- Jury Selection

Before trial, judge told defendant that Belton will have to testify in question answer format. This is conclusive and was argued before Appeals Courts as well. As Belton was not comfortable with question answer format, he changed his status from PRO SE and requested Standing Counsel to take over. Additionally, after the previous week discussion, the intention and strategic need to change from PRO SE status was for Belton to Testify.

Belton also wanted Mr. Beals to Testify. This witness was not subpoenaed. Beltons' wife (Krystal Sipps) went to pick up Mr. Beals, who as per attached Affidavit [of Beltons' wife] was under house arrest by Oakland Police and could not make it to Court. Opposing Counsel mis informed Court that Mr. Beals did not want to testify.

Belton did not want his wife to Testify.

## B. During Trial

During Trial, standby counsel did not call Belton to testify, despite Beltons' request. Belton submits following cases where Federal Courts have upheld "Right to Testify":

The defendant was represented by counsel at a competency hearing. The attorney refused to call him to the stand and the defendant complained – disruptively – and was removed from the courtroom.

The Ninth Circuit holds that a defendant has a constitutional right to testify at his competency hearing, even over the advice of counsel. (The dialogue at the hearing was essentially as follows: "Counsel: I have advised him not to testify." Defendant: "That's because you're a criminal." Court: "Mr. Gillenwater, that's enough." Defendant: "Then get me the fuck out of here.") ***United States v. Gillenwater***, 717 F.3d 1070 (9th Cir. 2013).

The defendant represented himself at trial. The judge asked him if he wanted to testify. The defendant expressed concern that he would not a lawyer to ask him questions, and he would have to submit to cross-examination without having the opportunity to present his testimony. The judge kept asking him, "Do you want to testify, or not?" without explaining that he would, in fact, have the opportunity to present his own sworn testimony. This was reversible error. Though a judge has no obligation to explain the law to a defendant who is representing himself, the judge is

required to correct a misimpression as in this case. ***United States v. Hung Thien Ly***, 646 F.3d 1307 (11th Cir. 2011).

Failing to advise a defendant in a death penalty case that he may testify during the penalty phase – even if he did not testify in the guilt-innocence phase, is ineffective assistance of counsel. ***Canaan v. McBride***, 395 F.3d 376 (7th Cir. 2005).

Defense counsel prevented the defendant from testifying in his firearms trial. Counsel's decision was based on the desire to keep out impeaching information, such as the defendant's prior drug dealing and bad check charges. The Fifth Circuit concludes that barring the defendant from testifying is deficient performance under Strickland v. Washington, though there was no prejudice in this case. Counsel is obligated to advise the defendant of the strategy decisions being made, but with regard to whether the defendant should testify, the defendant makes the ultimate decision and that decision may not be vetoed by counsel. ***United States v. Mullins***, 315 F.3d 449 (5th Cir. 2002).

The defendant told his attorney that he was asleep in the backseat of the car when two other people committed the crime. There was no other evidence to support this version of events. The attorney asked to withdraw from the case, claiming an ethical issue and when the court denied the motion to withdraw, refused to call the defendant to the stand. The judge gave the defendant the choice to either proceed pro se or acquiesce to the attorney's decision that the defendant would not testify. This was improper. There was insufficient evidence to establish the defendant's intent to commit perjury. ***United States v. Midgett***, 342 F.3d 321 (4th Cir. 2003).

Though deciding the case on other grounds, the appellate court addressed the question of how a defendant should raise a claim that his attorney refused to call him to testify at trial. Without deciding the question, the court concludes that the defendant's failure to complain at trial does not amount to a waiver of this claim that

he was denied the constitutional right to testify. ***United States v. Vargas***, 920 F.2d 167 (2d Cir. 1990).

It is not appropriate for the trial judge to question the defendant about his decision whether to testify, or not. Instructing the defendant that he has the right to testify could influence the defendant to waive his Fifth Amendment right not to testify. Therefore, only in an unusual case, where there appears to be discord between the defendant and his attorney should the trial court address the issue – but even then, only discreetly. ***United States v. Pennycooke***, 65 F.3d 9 (3rd Cir. 1995).

The defendant's attorney insisted that the defendant not testify in his own defense. The attorney threatened to withdraw if the client did testify. This violated the defendant's right to testify and required a new trial. The right to testify at trial cannot be forfeited by counsel, but only by a knowing, voluntary, and intelligent waiver by the defendant himself. The right to testify in his own defense is a fundamental right. Rock v. Arkansas, 483 U.S. 44 (1987). After rehearing en banc, the decision was affirmed. ***Nichols v. Butler***, 953 F.2d 1550 (11th Cir. 1992).

A defendant has the fundamental right to testify in his own defense. ***This may only be waived personally, not solely through counsel.*** Thus, if the attorney vetoes the defendant's decision to testify, the defendant may challenge his conviction. After rehearing the case en banc, the Eleventh Circuit re-affirmed the principle that the defendant has a fundamental right to testify and the right may not be unilaterally waived by his attorney. However, the facts in this case did not show that the defendant's will was overborne. Rather, the attorney urged the defendant not to testify and the defendant agreed. Consequently, there was no ineffective assistance of counsel. ***United States v. Teague***, 953 F.2d 1525 (11th Cir. 1992).

## VI. MR. BEALS WANTED TO TESTIFY AND WAS STOPPED BY OAKLAND POLICE

During his arrest, Beals stated to one of the arresting officers (Ofc. Buford) that he was in the area to pay back some money to someone, and that he did not receive anything in return for the money that was owed. Beals was cited and released. The marijuana found on Beals was not tested or otherwise examined.

Ofc. Phan states that he thereafter noticed a black man in his 40s, about 6 feet tall, purchase what Phan described as "an unknown small object" (which Phan believed to be crack cocaine) from Mr. Belton. Phan says that the buyer put the narcotics in his mouth, and for the reason, Phan says he did not order his team - which consisted of five other officers - to detain or arrest the purchaser. Specifically, Phan said that although he suspected that the unknown small object that had been given to the man might be narcotics, "the likelihood of recovering the suspected narcotics would not be possible."

## A. Mr. Beals was a seller

*Pg 105 Transcript of Jury Trial Proceedings Volume 3 as to Marcus Belton held on 6-24-2015 [Exb D]*

*THE WITNESS: I'm sorry; can you play that again?*
*(Portion of audio recording played in open court, not reported)*
*BY MR. FITZPATRICK:*
*Q So you said about this black man in the puffy jacket, "He's working"?*
*A He is working a potential buyer. "He's working" is something, a kind of a phrase that we say as, hey, this narcotic buyer is working a deal with a dealer. He's working. There's something going on. He's attempting to work a deal. So, "He's working."*
*Q Right, right. So he could be a seller.*
*THE COURT: Who could be a seller?*
*MR. FITZPATRICK: The black puffy jacket man.*
*THE WITNESS: From the way it was communicated, I knew it was a buyer, sir.*
*BY MR. FITZPATRICK:*

*Q Did you say "a potential buyer"?*

*A Yes, sir.*

*Q So that implies that there was no purchase or anything going on at that point.*

*A Yes, that's correct. **The transaction was not completed.** Not done.*

***Q And is there any recording ever of you describing a completed transaction regarding this person?***

***A I'm not sure, sir.***

*Q Have you listened to the communications of that day before testifying here today?*

*A I have not listened to the entire day.*

*Q Okay. I'll ask the Judge to have you subject to recall, and I'll ask you to listen to those, and then I'll bring you back in so you can tell the jury if there's ever a communication regarding a post transaction with this man in a black puffy jacket. Okay?*

Mr. Beals testimony was very important as pointed out above that the officer who allegedly saw the deal [between Mr. Beals and Mr. Belton], ***NEVER ACTUALLY SAW THE TRANSACTION.***

Please See Exb C incident recall sheet, and Exb E [ Mr. Beals. Notice to appear]

## B. Any Counsel including Standby Counsel failed to subpoena Mr. Beals

Belton also wanted Mr. Beals to Testify. This witness was not subpoenaed. Beltons' wife (Krystal Sipps) went to pick up Mr. Beals, who as per attached Affidavit

[of Beltons' wife] was under house arrest by Oakland Police and could not make it to Court. Opposing Counsel mis informed Court that Mr. Beals did not want to testify. [See attached declaration of Krystal Sipps.]

> I Krystal Sipp solemnly swear that the contents of this document are true and correct, and I agree to abide by the terms in this affidavit.
> On the morning day Beals was due to testify in court on Marcus Belton behalf, I arrived at his grandmother house, was swarming with Oakland Police Officers and Beals had been detained. Days before Beals was more than willing to testify for Belton it was arranged that I pick him up from his grandma house so we can ride to the court house together on the day he Beals was due to testify.
>
> Krystal Sipp
> 6-10-2020

## C. Marijuana recovered from Mr Beals was not tested hence not same

Prosecution only presented that Phan saw Beals put the same marijuana in his pocket that Belton had handed him. However, the marijuana allegedly recovered from Mr. Beals was never tested or compared to the marijuana in the car to further muddy the issue. *This remains a disputed issue of fact*. Mr. Belton must receive benefit of doubt / failed test.

## D. Mr. Beals admitted that he did not buy from Mr. Belton

The audio file where Mr. Beals clearly states that he did not buy from was denied from evidence and Standby Trial Counsel was not allowed to present it. It was only played (headphones) and admitted only as transcripts in evidence Docket 150 but never presented to jury for proper evaluation. [standby Counsel failed to bring

this to Courts and Jurys' notice and Appellate Counsel failed to bring this to Appellate Courts notice.]

### E. Time stamp of video/ audio recordings / transcripts don't match

Also, the tape recording when Mr. Beals was arrested and date when Mr. Belton was arrested have a clear mismatch. This was allowed as evidence in CA State Court and the explanation that time difference of GMT/PST is also fails short on the face of it as the difference is in whole day not just hours. This is abundantly clear that Mr. Beals was arrested a day before from the arrest of Mr. Belton

### F. Assistance of Investigator

The Ninth Circuit has held that "'the effective assistance of counsel guarantee of the Due Process Clause requires, when necessary, the allowance of investigation expenses or appointment of investigative assistance for indigent defendants in order to insure effective preparation of their defense by their attorneys.'" Williams v. Stewart, 441 F.3d 1030, 1053 (9th Cir. 2006) (quoting Mason v. Arizona, 504 F.2d 1345, 1351 (9th Cir. 1974). However, there is no Supreme [*25] Court authority establishing or recognizing a constitutional right to effective assistance from an investigator, as required by 28 U.S.C. 2254(d). Thompson v. Lewis, 2003 U.S. Dist. LEXIS 2749, 2003 WL 715900, (N.D. Cal. 2003) (holding that the right to effective assistance of counsel did not include the right to effective assistance from an investigator during self-representation). Consequently, petitioner is not entitled to federal habeas relief on this claim. (Brown v. Carey (N.D.Cal. Nov. 8, 2011, No. C 06-0264 WHA (PR)) 2011 U.S.Dist.LEXIS 129760, at *24-25.)

Here the investigator wanted to investigate / bring evidence to light and was stopped by Counsel. [See attached email.] Investigator asked for guidance or process or further action from Counsel, who clearly denied and stopped investigator to proceed any further. How could Mr. Belton (in custody) have interacted with his investigator?

Even though Mr. Belton does not have right to investigator, he has a right to effective Counsel, which was clearly breached and warrants immediate action by this Court.

### G. Standby Counsel failed to bring this to Courts and Jurys' notice.

The] test [for effective assistance of counsel] requir[es] the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. United States ex rel. Brunt v. Walls, 2002 U.S. Dist. LEXIS 5697.

Here, standby Counsel failed to highlight transcripts in evidence Docket 150 and present to jury for proper evaluation of prosecution witness testimony, even when prosecution Attorney pointed out that it is available in transcripts.

Docket no.150 [see declaration of Mr. Kumar infra.]

**On Vol 4 page 21-22 of Jury Trial Transcripts**

> *MR. KUMAR: To perfect the record, the audio files*
> *that were provided in discovery were identical digital copies*
> *of what was provided to the Government from the Oakland Police*
> *Department after receiving a request from discovery --*
> *regarding discovery from the defendant, I believe, at Docket*
> *No. 150.*

He did try to get the audio file where Mr. Beals clearly states that he did not buy from was denied from evidence and Standby Trial Counsel was not allowed to present it. It was only played (headphones.)

### H. Appellate Counsel failed to bring this to Appellate Courts notice.

Counsel has a constitutionally-imposed duty to consult with a criminal defendant client about an appeal when there is reason to think that a rational defendant would want to appeal or that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Roe v. Flores-Ortega, 528 U.S. 470, 480, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

Here Mr. Belton repeatedly requested Appellate Counsel to excuse herself and also tried to file repeatedly in Appeals Court, but Appellate Counsel never excused herself seriously injuring Mr. Belton and his Appeal. [See Exb H.]

Appellate Counsel, even when repeatedly asked by Appellate Judge failed to read and clarify records. All judges pointed out that it is clear matter of ineffective counsel. [See video of appellate arguments.]

https://www.youtube.com/watch?v=rEXCtJpokHw#action=share

## VII.  THE FAILURE TO ARREST BEALS AND THE UNKNOWN SECOND BUYER

The government argues that the failure to arrest Beals and the second buyer does not help defendant establish that the purchases were concocted, asserting that arresting the second buyer would have risked detection for the arrest team. Opposition at 7. But the arrest team was able to detain and cite Beals without detection so it is hard to believe that the team could not have figured out a safe way to detain the purported cocaine buyer. Because of the officers' decisions, there is simply no forensic evidence linking either the marijuana found on Beals or the cocaine supposedly "mouthed" by the second buyer to the drugs found in defendant's car. The factual assertion that the drugs possessed by the buyers were from defendant's car remains disputed.

## VIII.  DEFENSE VOIR DIRE WRONGFULLY DENIED

Court denied option to Voir Dire to defense for Jury Selection to benefit prosecution. This is irreversible error.

*On Vol 1 page 29 of 235 of Jury Trial Transcripts*

> MR. FITZPATRICK: *Thank you. You had indicated that*
> *you were going to conduct voir dire because Mr. Belton was*
> *representing himself. Now that he has counsel, I would ask to*

*be able to conduct voir dire on behalf of Mr. Belton.*
*THE COURT: Mr. Kumar?*
*MR. KUMAR: Your Honor, the Government has not made*
*the preparations to conduct voir dire. The Government's*
*understanding is that the Court would be conducting voir dire*
*in this matter. And --*
*THE COURT: I think Mr. Kumar is making a fair point.*
*Request is denied.*
*MR. FITZPATRICK: Thank Your Honor. I have a written*
*brief that I would like to file as to the defense-requested*
*voir dire, then, that I haven't been able to file because I*
*haven't been the person to file it before just two minutes ago.*

Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able to follow the court's instructions impartially and evaluate the evidence cannot be fulfilled. Similarly, lack of adequate voir dire impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts. (***Rosales-Lopez v. United States*** (1981) 451 U.S. 182, 183 [101 S.Ct. 1629, 1632, 68 L.Ed.2d 22, 25].)

[I]n affirming voir dire as a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present, the Court wrote: "'**[W]here the indictment is for a felony, _the trial commences at least from the time when the work of empanelling the jury begins._**'" Lewis v. United States, 146 U.S. 370, 374, 13 S. Ct. 136, 36 L. Ed. 1011 (1892) (quoting Hopt v. Utah, 110 U.S. 574, 578, 4 S. Ct. 202, 28 L. Ed. 262 (1884)). See Swain v. Alabama, 380 U.S. 202, 219, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965) (**voir dire "a necessary part of trial by jury"**); see also Ricketts v. Adamson, 483 U.S. 1, 3, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987); United States v. Powell, 469 U.S. 57, 66, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). **Jury selection is the primary means by which a court [\*\*22] may**

enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S. Ct. 1629, 68 L. Ed. 2d 22 (1981); Ham v. South Carolina, 409 U.S. 524, 93 S. Ct. 848, 35 L. Ed. 2d 46 (1973); Dennis v. United States, 339 U.S. 162, 70 S. Ct. 519, 94 L. Ed. 734 (1950), **or predisposition about the defendant's culpability**, Irvin v. Dowd, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961). (***United States v. Cazares*** (9th Cir. 2015) 788 F.3d 956, 968.)

Trial Court errored and did not allow a single question to be asked from Prospective-Jurors by Defendants" Counsel.

## IX. BAISED JUDGE

*On Vol 1 page 34 of 235 of Jury Trial Transcripts*

> *COURT: For eleven years I was a state-court*
> *judge in Alameda County, over in Oakland.*
> *Who's from Alameda County? Raise your hand.*

Parties and their counsel are entitled to question the impartiality of the judges before whom they appear and judges have a professional responsibility not to take such challenges personally. (***Bernard v. Coyne*** (In re Bernard) (9th Cir. 1994) 31 F.3d 842, 842.)

For reasons best known to him, on the jury selection first day of Trial, Trial Court Judge disclosed that he was Judge in California State Court (Alameda County) for 11 years before recently becoming Federal Judge.

During Jurys' voir-dire, these uncalled-for comments may be and was conceived by Jury that Judge knows and vouches for actions of Oakland Police Department.

If Judge wanted to disclose, he should have recused himself OR disclosed to all parties at case initiation and sought any objections from all parties. This was never done. This is fatal error to trial and violation of due process of law. Defendant was caught by surprise and did not know how to react to this on the first day of trial.

Counsel for a party who believes a judge's impartiality is reasonably subject to question has not only a professional duty to his client to raise the matter, but an independent responsibility as an officer of the court. (Bernard v. Coyne (In re Bernard) (9th Cir. 1994) 31 F.3d 842, 842.)

Therefore, the ineffective counsel claim is also valid as Trial Counsel failed to raise this objection. (will be discussed again infra.)

## X.    DENIAL OF MOTION TO SUPPRESS

Belton repeatedly pleaded for his motion to suppress. ECF No. 288 at 14, 19, 26, 35. Belton's first attorney filed a motion to suppress, ECF No. 13, _**which was terminated without decision**_ when she withdraw from representation, ECF Nos. 25, 27. None of Belton's subsequent attorneys attempted to renew the motion during the pretrial process. Belton repeatedly with his limited resources and abilities from prison "attempted to file" and "raised issues before Judge" during the period in which he represented himself.

As soon as standby counsel took over for Belton on the first day of trial, he requested that a motion to suppress to be heard during trial. ECF No. 171 at 27:9-29:9. The Court denied the request, _**wrongfully**_ finding that Belton had not shown good cause for the failure to file a pretrial suppression motion. Id. at 232:2-12 (citing United States v. Wright, 215 F.3d 1020, 1026 (9th Cir. 2000)); see also Fed. R. Crim. P. 12(b)(3)(C), (c)(3).

MR. FITZPATRICK: *Thank you.*

*The second is that **I have had no opportunity to file a motion to suppress** before this moment because I have not been attorney of record, and I could not file things without Mr. Belton's -- without his acquiescence.*

*So at this time, Your Honor, I would ask for the Court to exercise its discretion to allow for a motion to suppress to be heard during the trial, because I haven't had the opportunity to deal with it previous.*

*And I would say that I think that I know that there are statutory rules in place for the orderly administration of justice so the that the Court can control its calendar and its litigants.*

***However, if there's evidence that's been seized that's in violation of the Constitution, there is no higher authority in our legal system. Statutory authority certainly falls underneath the Constitution. So I think that you could never rectify infirm or constitutionally-infirm evidence.***

***So I'm asking for the opportunity to present that to the Court during the posture — or the pendency of the case.***

THE COURT: *Mr. Kumar?*

MR. KUMAR: *Your Honor, the Government's response is that the Defendant had an opportunity to file a motion to suppress. The Court set a pretrial filing deadline in this matter.*

*A motion to suppress was filed when the Defendant was initially represented by Ms. Jennifer Schwartz. That motion was fully briefed, and then it, for whatever reason, was withdrawn by the Defendant.*

*And so the Government's view is that the Defendant has waived his the right to make a motion to suppress, and that trial is not the appropriate context to make that motion.*

THE COURT: *The Court will take that --*

*(Off-the-Record discussion between Defendant and Counsel)*

MR. FITZPATRICK: *Your Honor, if I may, to make the record clear for Mr. Belton?*

THE COURT: Yes.

MR. FITZPATRICK: Mr. Belton's -- I believe the
Court's already ruled on this, so I'm merely putting it forward
because it's being asked of me.
The videos that he hasn't been able to see didn't allow
him to make the motion to suppress prior to the Court's cutoff
date for the pretrial conference.

THE COURT: Thank you. I will take the Defendant's
request under submission. It doesn't -- it's not something
that I need rule on before we impanel a jury.
The motion for a continuance having been denied, through
counsel, Mr. Belton is requesting that he be allowed to make a
motion in the trial.
So let me think about that and I'll rule on that later
today.

**Vol 1 page 232 of 235 Jury Trial Transcripts**

THE COURT: I have some matters.
Earlier, the Defendant made a request to bring a motion to
suppress in the trial, and indicated that I would take that
request under submission, and rule on it later today. ___And that___
___request is now denied.___
I don't believe that there is good cause for the ___failure___
___to bring the motion earlier.___ Good cause is required. In fact,
the docket will reflect that a motion to suppress was filed
earlier, and withdrawn by the Defendant.
As authority for the Court's ruling, I would cite United
States versus Wright, 215 F.3d, 1020 at Page 1026, a 2000 -- a
year 2000 decision from the Ninth Circuit.

**Vol 1 page 234 of 235 Jury Trial Transcripts**

MR. FITZPATRICK: Sure.
So, Your Honor, Mr. Belton objects to the denial of the
opportunity to do the motion to suppress during the trial
because of the fact that I just took over the case, ___and because___
___there was new evidence with CDs.___
THE COURT: Thank you, Mr. Fitzpatrick. I know that

> *you are reading from notes that Mr. Belton prepared.*
> *Pursuant to our earlier discussion, if you or he would*
> *like also to file those notes on the -- excuse me, to make*
> *those -- not file them on the docket, but to make them part of*
> *the court record, you can let Mr. Noble that tomorrow and he'll*
> *mark them as a court exhibit.*

Trial Court wrongfully denied the Motion even when it was allowing prosecution to submit new evidence with CDs "**.....because there was new evidence with CDs."**

District Court's desire to avoid penalizing criminal defendant for inadvertence of his attorney constitutes cause under Rule 12(f) for delayed consideration of motion to suppress evidence and is within court's discretion. United States v. Hall, 565 F.2d 917 (5th Cir. 1978).

USCS Fed Rules Crim Proc R 12

## XI. DISPLAY OF FIREARM, AMMUNITION AND OTHER ITEMS TO JURY IN OPENING STATEMENT WITHOUT BEING ADMITTED INTO EVIDENCE

Belton pleads that the "prosecutor" forgot that his solemn duty is *"to seek justice, not merely to convict."* ABA Standards, The Prosecution Function § 1.1(c). As objected by Trial Counsel the display of gun in opening statement was "inflammatory and prejudicial."

### *On Vol 2 page 4-5 of 196 of Jury Trial Transcripts*

> *MR. KUMAR: Your Honor, there's a firearm and the*
> *ammunition that was recovered with the firearm that the*
> *Government was intending to show to the jury, as well as some*

*of the items that were recovered from the vehicle during the
search, including some drugs and some contraband or
paraphernalia associated with those drugs.*

*THE COURT: What relief are you asking?*

*MR. KUMAR: The relief, your Honor, that the
Government is requesting is just permission to show those items
during its opening statement.*

*And I neglected to mention, your Honor, that the
Government would also like to show a photo as well.*

*...............................*

*MR. FITZPATRICK: Okay. Even without seeing it, I
know I object because it is unnecessary, I believe, at the
opening statement stage of the proceedings. I think it's just
inflammatory and prejudicial. The jury -- we're not disputing.
We're not saying they are not going to see a gun. A picture
would suffice to get the point across to the jury. I don't
know what possible reason they would need to actually
physically show it to the jury, other than inflammatory and
prejudicial.*

*THE COURT: Mr. Kumar, do you want to respond?*

*MR. KUMAR: Your Honor, the Government's position is
that it's neither inflammatory nor prejudicial. This is an
item -- the item of evidence that the Government would be
presenting in this case and those items are necessary to prove
the elements of the offenses that have been charged.*

Justice Sutherland gave classic description of their role in criminal prosecutions:

> *The United States Attorney is the representative not of an ordinary party
> to a controversy, but of a sovereignty whose obligation to govern
> impartially is as compelling as its obligation to govern at all; and whose
> interest, therefore, in a criminal prosecution is not that it shall win a
> case, but that justice shall be done. As such, he is in a peculiar and very
> definite sense the servant of the law, the twofold aim of which is that guilt
> shall not escape or innocence suffer. He may prosecute with earnestness
> and vigor -- indeed, he should do so. But, while he may strike hard blows,
> he is not at liberty to strike foul ones. It is as much his duty to [\*\*17]
> refrain from improper methods calculated to produce a wrongful
> conviction as it is to use every legitimate means to bring about a just one.*

**United States v. Polizzi**, 500 F.2d 856, 892 (9th Cir. 1974), cert. denied, 419 U.S. 1120, 95 S. Ct. 802, 42 L. Ed. 2d 820 (1975)

*On Vol 2 page 8 of 196 of Jury Trial Transcripts*

> *THE COURT: Mr. Kumar, do you have a **good faith belief that the gun will be admitted into evidence?***
>
> *MR. KUMAR: Yes, your Honor.*
> *THE COURT: And will there -- will an officer of the Oakland Police Department or other law enforcement testify that the gun was recovered from Mr. Belton's person?*
> *MR. KUMAR: Yes, your Honor.*
> *THE COURT: Then the **objection regarding the use of the firearm in the courtroom is overruled** and the firearm may be displayed, as I indicated a moment ago.*
> *. . . . . . . . . . . . . .*
> *THE COURT: And, Mr. Fitzpatrick, **I assume that your objection** to the use of those items would be the same; and that is, that it's not necessary to show the jury these items. Photographs or a verbal description would be adequate.*
> *MR. FITZPATRICK: Exactly. An opening statement, as I understand it, is a road map. **It's not actually listing every piece of evidence that's going to come in.** It could take days to do that, and that will be done during the course of the trial.*
> *THE COURT: The Court's ruling will be the same. The objection will be **overruled** and the Government may use the items of evidence that were seized in the arrest.*

Belton also pleads that although the trial judge did instruct the jury that the gun was shown for *illustrative purposes only* and **gun was not admitted into evidence**, he did not do so until the end of the trial, as a part of his final comments before the jury retired to deliberate.

*It is almost inconceivable, however, that any attempted curative instruction could have erased so dramatic an image as a firearm from the minds of all the jurors. See Thomas v. United States, 363 F.2d 159, 162-65 (9th Cir. 1966). Most assuredly, such an instruction given belatedly, at the close of the trial, is less likely to do so than would one rendered immediately after the occurrence of such grossly prejudicial misconduct. (United States v. Pratt (9th Cir. 1976) 531 F.2d 395, 400, fn. 2.)*

## XII. THE TAINT OF ILLEGAL ELECTRONIC SURVEILLANCE SINCE 2004.

*Secretly made tape recordings of defendant's conversations are "statements" discoverable under Rule 16.* **Davis v. United States**, 413 F.2d 1226 (5th Cir. 1969). USCS Fed Rules Crim Proc R 16.

The complete prosecution theory is exposed at this point of trial. Why is ATF involved? And why is ATF coordinating the whole process?

It was not that some Oakland Police Officer on routine traffic stop or routine visit etc. just observed Mr. Belton. Mr. Belton was followed around, being watched and was subject of illegal surveillance for long (probably from 2004, see traffic stop infra.) This whole episode was a pre calculated move, done off the police scanner and done on cell phone, pager etc.

### *On Vol 2 page 10-11 of 196 of Jury Trial Transcripts*

> *MR. KUMAR: That's correct, your Honor. The Government would like to designate **Special Agent Nathan Sanchez of the ATF** as its party representative. Agent Sanchez will be testifying during the course of the trial, but we ask that he be allowed to remain in the courtroom, in part, because he's also helping us coordinate the various witnesses that we will be calling.*
> *THE COURT: Mr. Fitzpatrick, do you wish to be heard?*

MR. FITZPATRICK: Submitted.

THE COURT: Agent Sanchez will be designated the
Government's party representative and may remain in court
during the testimony of our witnesses and not be subject to the
witness exclusion order that might otherwise apply.

MR. KUMAR: I would like to note, your Honor, that
there is a second case agent. **Special Agent Vinton Johnson is
also an Oakland Police Department officer,** and he will be also
in the courtroom. He won't be sitting at counsel table, like
he is right now, if Agent Sanchez is present.

In other words, they simultaneously wouldn't be sitting at
counsel table together, but we did want to obtain the Court's
permission that one or the other case agent may sit at the
table during the course of the trial.

Appellants claim that the trial was materially tainted by leads from unlawful electronic surveillance.

The government conducted electronic surveillance against Mr. Belton since 2004 or before. The product of this surveillance is embodied in typewritten transcriptions or "logs" of the intercepted conversations which was never produced to Mr. Belton and is "prosecutorial misconduct."

In other cases, instance and declarations, the government concedes that the electronic surveillance was conducted illegally and was never disclosed to Mr. Belton.

### 2004 Previous Traffic Stop of Walton and Belton [Exb A]

On September 10, 2004, Officers Parkinson and Midyett made a
traffic stop of a car driven by Juanita Walton. Ms. Walton was
accompanied by her boyfriend, **_Marcus Belton_**, who was known to the
police as a dangerous criminal. See Parkinson Depo., 27:22-25. The
officers found a bank card and some other papers belonging to Mr. Smith
in the [*3] car. See id., 93:9-13. Mr. Smith had previously reported this
card, his social security card, and driver's license missing. See Torry

*Smith's Depo., 27:21-28:25. The officers claim to have not known that Mr. Smith had made such a report. See Midyett Depo., 113:18-20. The officers ran Mr. Smith's name through their car computer and learned that Mr. Smith was on parole. See Midyett Depo., 78:2-21. They obtained Mr. Smith's contact information from their computer and proceeded to his residence. See id. The officers did not seize Mr. Smith's bank card or the other documents they found in the car, nor did they contact the bank that had issued the card. See Midyett Depo., 78:9-17. These facts are not disputed. **Defendants contend they sought Mr. Smith to determine whether he might be a cohort of Walton or Belton or be a victim. See Parkinson Depo., 94:22-95:1.** (Smith v. City of Oakland (N.D.Cal. Aug. 9, 2007, No. C-05-4045 EMC) 2007 U.S.Dist.LEXIS 59941, at \*2-3.)*

*At trial, both Plaintiffs testified about what took place on the day at issue. Mr. Smith -- as well as Ms. Gray -- denied having a weapon at the residence. According to Mr. Smith, Defendant Officers questioned him about a **known criminal**[2] in whose car Mr. Smith's bank card was found. It was that bank card that led Defendants to Mr. Smith's residence. After Mr. Smith denied knowing the individual and knowledge of any other crimes in the area, he was arrested and taken into custody. According to Mr. Smith, he was questioned [\*\*4] about his knowledge of other crimes while in the police car. It was not until he was booked at the police station that he was informed of the weapons charge. **Defendants conceded at trial that it was not uncommon for them in their investigation of crimes in Oakland to detain individuals***

---

[2] This known criminal was Mr. Belton.

*subject to arrest, ask them for information about crimes, and then facilitate their release upon their cooperation.* Plaintiffs contend that *a rifle was planted* on Mr. Smith in order to coerce him into giving information about other crimes, information he did not have. **Smith v. City of Oakland**[3], 538 F. Supp. 2d 1217

The prosecutors were *aware* of this surveillance, and ***pretrial access to the logs*** was denied Mr. Belton, and respective attorneys. The court must ***conclude*** that "the evidence in this case is tainted by the illegal electronic surveillance and fatally contaminated the trial."

This Court has Standing to rule on this issue in Post-conviction Motion:

Ordinarily government has duty under Rule 16(a)(1)(A) [now Rule 16(a)(1)(A), (B)] to disclose statements of defendant in possession, custody or control of government, when defendant requests inspection of such statements. United States v. Pelton, 578 F.2d 701, 4 Fed. R. Evid. Serv. (CBC) 334 (8th Cir.), cert. denied, 439 U.S. 964, 99 S. Ct. 451, 58 L. Ed. 2d 422 (1978).

Once government has made known that certain items of evidence are in its possession, its obligation to make such items available for inspection under proper pretrial discovery and inspection order does not arise until defense counsel makes request for inspection. United States v. Lambert, 580 F.2d 740 (5th Cir. 1978).

---

[3] A jury concluded that defendant police officers **planted** a semiautomatic rifle in plaintiff parolee's residence in order to frame him. The jury rendered a verdict in favor of both the arrestee and the other plaintiff, the parolee's girlfriend, and awarded more than $ 6 million.

Failure of government to prepare proper FBI report or to retain notes of interview does not absolve it of duty to disclose; duty of disclosure is operative as duty of preservation. United States v. Warhop, 732 F.2d 775 (10th Cir. 1984).

To be subject to Rule 16, papers, documents, and tangible objects must be in actual possession, custody or control of Federal Government; Federal Government is not required to disclose and produce documents in actual possession, custody, or control of state officials, relevance of which Federal Government negligently or recklessly fails to appreciate. United States v. Gatto, 763 F.2d 1040 (9th Cir. 1985).

Mr. Belton should have been given access to all the logs and surveillance on him. (*United States v. Polizzi* (9th Cir. 1974) 500 F.2d 856, 909-910.)

## XIII. Pre-Trial Discovery and audio tape not allowed to be heard by jury.

**On Vol 4 page 21-22 of Jury Trial Transcripts Court gave following order:**

> *THE COURT: ......*
> *I'm not saying that the exhibit is inadmissible under all*
> *circumstances. And I take no position regarding the pretrial*
> *discovery conduct. I've not been -- I've not been -- I'm not*
> *in a circumstance where the defendant has called a police*
> *officer or other law enforcement official who was somehow*
> *involved in the creation or whose voice can be heard on the*
> *audio file. I'm just being asked to admit an electronic audio*
> *file, and on that record, and for the reasons that have already*
> *been stated, I sustain the objection.*

Trial Court erroneously disallowed audio file to be played to Jury.

***One,*** it was part of Docket no.150 [see declaration of Mr. Kumar infra.]

**On Vol 4 page 21-22 of Jury Trial Transcripts**

> MR. KUMAR: To perfect the record, the audio files
> that were provided in discovery were identical digital copies
> of what was provided to the Government from the Oakland Police
> Department after receiving a request from discovery --
> regarding discovery from the defendant, I believe, at Docket
> No. 150.

*Two*, it was unfair to Defendant as Trial standing Counsel tried to plead to Court.

**On Vol 4 page 20-23 of Jury Trial Transcripts**

> MR. FITZPATRICK: *The discovery in this case came on
> the 9th of June to Mr. Belton. It did not delineate the names
> of the individual speakers. **There has been nothing provided to
> the defense that allowed for that, to be able to delineate who
> said what, when, where. It's not delineated by their officer
> badge number, their name, their unit identifier number.
> There's nothing in the recordings that give us that
> information.**
> So if we're being excluded from introducing this because
> of that, I just want the record to be very clear, **there was no
> way for Mr. Belton to address this issue before he turned from
> pro se to having me step in.**
> ...................
> MR. FITZPATRICK: The witnesses were played --
> Officer Zhou was played when we had him -- I was playing it to
> him with earphones on. And I think he sponsored what was in
> there.
> I can't tell you for certain that there was an officer who
> didn't testify because **I don't know who they are. So we don't
> have a way of – and I don't want to mislead the Court,
> obviously.** So --*

Defendant pleads that following 9th Circuit case clearly holds the law and this court must give relief to Mr. Belton.

> *In case in which defendant appealed his conviction for violating 8 USCS § 1326(a), district court erred in failing to order production of certain U.S. Border Patrol dispatch tapes under Fed. R. Crim. P. 16; district court concluded, without listening to tapes, that defendant's showing of materiality was speculative, **but tapes could have been crucial to defendant's ability to assess reliability of agent's testimony and to cross-examine him effectively, both important issues in his defense.** United States v. Muniz-Jaquez, 718 F.3d 1180 (9th Cir. 2013).*

## XIV. AMENDMENT TO GRAND JURY INDICTMENT

A defendant in a felony trial *can only be convicted of charges upon which a grand jury has returned an indictment.* An indictment is **_constructively amended_** where the evidence presented at trial, together with the jury instructions, raises the possibility that the **_defendant was convicted of an offense other than that charged in the indictment._** (United States v. Arreola (9th Cir. 2006) 467 F.3d 1153, 1155.)

**_On Vol 5 page 14 and 15 of Jury Trial Transcripts_** Court directed as follows:

> **_So you asked a note about instruction No. 31,_** *which appears at Page 32, and this is the instruction regarding a violation of 18 USC Section 924 and **the use of the conjunctions "and" and "or."**
> I will instruct you that these are alternative bases charged against the defendant in this case. And the Government must prove **either that the defendant carried or that the defendant used a firearm** in order to meet its burden with regard to this offense.
> And so you'll see in Line 2, which is the title, it says*

> *"Using or Carrying"* because that is the conduct that
> Section 924 criminalizes. ___There isn't "and" at Line 4, and___
> ___that's because it's taken from the language of the indictment___
> ___in the case.___

Defendants' objection was ___erroneously___ ignored by Judge [Vol 5 Page 12 of 28.]

> *THE DEFENDANT: I object, your Honor --*
> *MR. FITZPATRICK: Mr. Belton --*
> *THE COURT: Mr. Belton, you'll -- I've previously*
> *ordered several times that you're to speak in this proceeding*
> *only through your attorney. And even though the jury is not*
> *here, your comments are disruptive and I would ask you to stop*
> *making them. If you have objections you want to make, you can*
> *make them in writing and I'll allow those to be filed as part*
> *of the court record.*

## XV. AMENDMENT TO JURY INSTRUCTIONS FROM "USE AND CARRY" TO "USE OR CARRY"

### On Vol 5 page 3 of 28 of Jury Trial Transcripts

> *I don't have the instruction in front of me, but I do have*
> *the Ninth Circuit model instruction. And the ___jurors have two___*
> *___questions.___*
> *First, the instruction is not consistent in its use of*
> *"and" on "or" with regard to the words "using and carrying."*
> *So in the title of the instruction it says "or," but in the*
> *body of the instruction at Line 4 on Page 32 it says "and."*
> *And on 919 it says "or."*
> *Obviously, these are alternative theories in the statute.*
> *So I think, unfortunately, the Ninth Circuit's use of the word*
> *"and" is confusing.*
> *.....................*
> *"The Supreme Court has construed the term 'use'*
> *to require proof that the defendant actively employed*
> *the firearm during and in relation to the predicate*
> *crime."*
> *Bailey versus United States, 516 U.S. 137 at Page 150,*
> *1995.*

Trial Court erroneously ordered following:

On Vol 5 page 14 and 15 of Jury Trial Transcripts Court directed as follows:

> But at Line 13 it should say: "Second, the defendant
> knowingly used or carried," at Line 13. And that is really
> where the **typographical error occurs.** And that is at Line 13.

Mr. Belton pleads that this was not **typological error** as explained **to jury** by
Judge over Defendants' objection and **erroneously** ignored by Judge [Vol 5 Page 12
of 28.] supra. The supreme Courts' ruling as added to model jury instructions are
clear in Bailey.

Mr. Belton never carried gun on him and "**never used**" or "**attempted to use**"
the gun.

## XVI. EXPLANATION TO JURY "ACTIVELY EMPLOYED"

On Vol 5 page 14 and 15 of Jury Trial Transcripts Court directed as follows:

> You also asked in your note for a definition of **"actively
> employed."** There are examples in the case law, but the law
> itself does not further define the term **"actively employed."**
> And that happens sometimes in jury instructions, that Congress
> has used language in a statute or one of the Appellate Courts
> has decided the law and used -- given us a phrase that we're to
> use in our cases and they simply don't provide a further
> definition. And so in that circumstance, the law requires that
> you, as jurors, to use your life experience and common sense
> and your knowledge of the English language and determine
> whether the facts, as found by you in this case, fit the
> definition of "actively employed." So I'm not able to further
> **define that word for you.**
> That concludes my further instructions of you.

Trial Court errored, despite discussing the case and over the objection of
Defendant, Trial Court failed to give clear instructions to Jury.

> **"Use"** of a firearm, for purposes of 18 USCS 924(c)(1)--which requires the
> imposition of specified penalties on a person who uses or carries a firearm
> during and in relation to any crime of violence or drug trafficking crime--does

*not extend to encompass the concealment by an offender of a gun nearby to be at the ready for an imminent confrontation; if the gun is not disclosed or mentioned by the offender, then the gun is **not actively employed** and is not **"used"** within the meaning of 924(c)(1). (**Bailey v. United States** (1995) 516 U.S. 137, 138 [116 S.Ct. 501, 503, 133 L.Ed.2d 472, 477].)*

Defendants' objection was clearly ignored by Judge [Vol 5 Page 11-12 of 28.]

> *MR. FITZPATRICK: Your Honor, I would hesitate to have an opinion as to that without having had the --*
> *THE COURT: Well, isn't the answer to that question no? Haven't you, yourself, suggested a moment ago that Mr. Belton's reaching for the gun in his waistband also would constitute a use?*
> *MR. FITZPATRICK: Well, that would -- in my interpretation attempting to, that would cover that.*
> *THE COURT: So that would constitute a use though, wouldn't it?*
> *MR. FITZPATRICK: Yes, your Honor.*
> *THE COURT: Okay. So the Bailey list is not complete.*
> *So you want me to give an incomplete list of examples of the terms "use" as a definition. And that makes me uncomfortable.*
> *MR. FITZPATRICK: I would disagree with that. I would say that the "attempting to" language in the Court's -- let me strike that.*
> *The "attempting to" can just as much relate to brandishing, so it's inclusive within that sentence. It just puts the "attempting to firing" or "attempting to fire."*
> *So I think that they have covered the circumstances in our case and this would be a pertinent instruction to give the jury given that they have asked for assistance.*

**Defendant at this point noted that his Standby Counsel was ineffective and tried to intervene. (this will again be discussed in ineffective counsel issue)**

> *THE DEFENDANT: I object, your Honor --*
> *MR. FITZPATRICK: Mr. Belton --*
> *THE COURT: Mr. Belton, you'll -- I've previously*
> *ordered several times that you're to speak in this proceeding*
> *only through your attorney. And even though the jury is not*
> *here, your comments are disruptive and I would ask you to stop*
> *making them. **If you have objections you want to make, you can***
> ***make them in writing and I'll allow those to be filed as part***
> ***of the court record.***

*This is clearly Mistrial, when Defendant is trying to properly and validly object and is stopped again and again by Judge*

Ironically, the appellant Counsel repeatedly mentioned in Appellant Oral proceedings that record is not clear, but she failed to plead this argument and repeatedly misinformed the court that Defendant was pro se and conducted his own trial. Whereas its clear from record that ***defendant was not conducting the Trial***, and despite his willingness to testify was also declined ***"right to testify."***

### Exhibits A *[TRANSCRIPT OF JURY TRIAL PROCEEDINGS Vol 5 page 7],*

> *THE COURT: Do you contend now that the evidence in*
> *this case is sufficient to support a conviction that relies on*
> *the jury finding that the defendant used a firearm within the*
> *meaning of Section 924(c)(1)?*
>
> *MR. KUMAR: Your Honor, I haven't fully researched*
> *the issue, but based on -- based on the initial research that*
> *your Honor was kind enough to share with the parties, **I would***
> ***say that the evidence would not support that theory.***

### Exhibits B *[TRANSCRIPT OF JURY TRIAL PROCEEDINGS Vol 5 page 3-*

*5]*

Then the jury wants a definition of *"**actively employed.**"*
I'll hear from counsel in just a moment. I did look at the
note or the comment of the Ninth Circuit Jury Instruction
Committee with regard to its Model Instruction 8.71, and
that -- there is a comment. It's on Page 215 of the model
instructions, and it reads as follows. It's a little lengthy.
I'll read the whole thing to you because it's helpful:
"The Supreme Court has construed the term 'use'
to require proof that the defendant actively employed
the firearm during and in relation to the predicate
crime."
*Bailey versus United States, 516 U.S. 137 at Page 150,
1995.*

"The active employment understanding of 'use'
certainly includes brandishing, displaying bartering,
striking with and, most obviously, firing or
attempting to fire a firearm."
Citing Bailey at Page 148.

"A reference to a firearm calculated to bring
about a change in the circumstance of the predicate
offense is a use, just as the silent, but obviously
and forceful presence of a gun on a table can be a
use."
Same citation.

"Although a person uses a firearm when he or she
trades it for drugs, Smith versus United States, 508
U.S. 223 at 241, 1993, a person does not use a
firearm when he or she receives it in trade for
drugs. Watson versus United States, 552 U.S. 7474 at
Page 83, 2007."

That is the Ninth Circuit Jury Instructions Committee
comment regarding "use," and I'm happy to give copies of that
page to anybody who wants it. I made some extras.

*I then went onto WestLaw to do some further research,
because Bailey is the dominant case. And if you just look at
other cases that have cited Bailey, it becomes very clear that
mere possession by itself is not enough to establish use.
Possession is not use. And I would cite United States versus
Perez, 129 F.3d 1340 at Page 1342, a Ninth Circuit case from
1997. Similarly, States versus French, 94 F.3d 653, Ninth
Circuit 1996. And all these cases rely on Bailey.*

*The French Court said:*
*"A defendant does not use a firearm by placing it
near drugs to provide a sense of security or to
embolden. Mere possession for protection does not
constitute use."*

*Later on the same Court said:*
*"The Government misinterprets the holding of
Bailey. The Supreme Court explained that if the gun
is not disclosed or mentioned by the offender, it is
not actively employed and it is not used."*

XVII. Court himself admitted that giving use and/or carry theory to Jury was
erroneous on part of Court

*So anyway, I -- I'll hear from the parties, but my own
tentative view is that it was -- **it was an error for the Court
even to give the optional paragraph of instruction 8.71 with
regard to use** because it's not even the government's theory in
the case. The government's theory in the case is that the
defendant carried a firearm in connection with a crime.*

and

**Exhibits C** *[SEALED EX-PARTE PROCEEDINGS page 265.]*

## XVIII.   PHAN'S ABILITY TO SEE DETAILS FROM HIS VANTAGE POINT

Ofc. Zhou, the arresting officer, did not personally witness Mr. Belton engage in drug sales or other illegal activity. Rather, Ofc. Zhou purportedly relied entirely on alleged observations made by Officer Pheareak Phan ("Ofc. Phan"), stating that he was directed by Ofc. P. Phan to arrest Mr. Belton. Ofc. Phan stated in his police report and testified at the preliminary hearing in state court that he was working undercover, and was parked on the south side of International Boulevard, on the 8400 block. Phan states that at about 5:45 p.m., he saw - across four lanes of rush hour traffic Belton walking back and forth on the north side of the 8400 block of International Boulevard., interacting with several people walking by (Id.) Phan says that he noticed a man (later identified as Alfred Beals ("Beals")) ride up to Mr. Belton on a bicycle and begin speaking with Mr. Belton. Phan said he saw Beals hand what appeared to be an unknown amount of U.S. currency to Belton, which Belton then put in his right pants pocket. Ofc. Phan claims that Belton then moved back to the Toyota Corolla parked nearby, appeared to retrieve unknown items from the car, and walked back to meet with Beals again. (Id.) Phan states that Mr. Belton then appeared to hand Beals "a clear plastic bag containing a green leafy-like substance of suspected marijuana." (Id.) Phan states that he then called in his arrest team, which was nearby, and had them arrest Beals who was found with a small amount of suspected marijuana. (Id.)

The government again tautologically asserts that no dispute exists as to whether Phan could see all the details about which he testified because Phan testified that he could see them. The government reckons that because a car window was open,

Phan's line of vision had to be adequate. But the government fails to address defendant's claim that notwithstanding Phan's testimony, his field of vision could not have been unobstructed given the four lanes of traffic, rush hour business, and most importantly, the fact that the unknown second cocaine buyer was crouched on the passenger side of the car. Belton now submits the declaration of his investigator who states under penalty of perjury that Phan simply could not have seen the crouching man, given the layout of the block and where Phan states defendant was parked. Declaration [*5] of Krystal Sipp, Exh. B. This remains a disputed issue of fact.

### XIX. Internal Affairs complaint

Shortly after Mr. Belton was arrested, one of the responding officers approached Belton ant stated that he (the officer) knew "the way it went down" was "fucked" and provided Belton with an Internal Affairs complaint form.

Belton completed the form and filed it with the Internal Affairs division of the Oakland Police Department. In mid-October 2013, he received a letter, dated October 15, 2013, from the(Internal Affairs division ("IA") of the OPD acknowledging receipt of his complaint. IA's policy, a' stated on its website, is to respond to a complaint within 120 days.

Belton pleads that all his Counsel failed to pursue the matter and get records / details directly or otherwise (subpoena/ FOIA) from IA.

This has seriously affected Mr. Beltons' rights.

### XX. Mr. Belton in an ex-felon not a felon.

```
 9        MS. MARSHALL:  Could I raise the question of bail for a
10   moment?
11        THE COURT:  Sure.
12        MS. MARSHALL:  I apologize for interrupting.
13        My client and I raised this to Judge Northridge who
14   denied my motion without prejudice.  I noted that a number of
15   the priors that are alleged in the complaint are inaccurate.
16   And I did, after receiving the CI&I, note a few.  There's a
17   felony specifically, and in 1996 that three years later was
18   reduced to a misdemeanor.  And it's been erroneously listed on
19   the complaint.  And there are a couple of cases that seem that
20   they've been charged twice.  So the 1996 and 1999 dates are
21   for the same offense, and are, I believe, erroneous in that
22   they're referring to the misdemeanor.  The second date is the
23   misdemeanor that that first allegation was reduced to.
24        So because I think there is some inaccuracies alleged in
25   the complaint, I would ask the Court to consider a reduction
26   at this time.
```

The Ninth Circuit addressed this particular factual situation in United States v. Geyler, 932 F.2d 1330 (9th Cir. 1991). In Geyler, the defendant had been convicted of Misprison of a Felony for which a term of imprisonment of over one year was authorized. Upon Geyler's discharge from imprisonment, he was granted an automatic restoration of civil rights.

Despite that restoration of Geyler's rights, the Government subsequently charged him with the same charge as here - 18 U.S.C. § 922 (g)(1) - and Geyler was convicted. The Ninth Circuit noted that any conviction effectively becomes a non-conviction if a felon's rights are restored. Geyler, supra, 1344. The Geyler court

examined the legislative intent behind 18 U.S.C. § 921(a)(20) and concluded [*3] that its language was clearly what Congress intended - that a state's restoration of civil rights to a person eliminates the underlying conviction as a predicate offense for purposes of federal firearms laws, whether the conviction was for a state or federal offense. Geyler, supra, at 1347.

Here, Mr. Belton asserts that his rights were restored on May 16, 2013 upon his completion of the conditions imposed upon him. See Exhibit 1 (Alameda County Probation Department Termination Notice). As such, he cannot qualify as a felon for federal firearms charges and, therefore, the instant conviction is erroneous, and Mr. Belton must be freed immediately.

Marcos Belton
6.30-2020

Marcus Belton 98908044
6230 hayes St
Oakland Ca 94021

CERTIFIED MAIL®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7020 0090 0001 5345 7665

RETURN RECEIPT
REQUESTED

Federal Courthouse
U.S. District Clerk Office 400s
1301 Clay St
Oakland Ca 94612



1000

94612

U.S. POSTAGE PAID
PCM1 LGENV
94610
OAKLAND, CA
JUL 07, 20
AMOUNT

$9.40
R2304M116536-77